**In re Raul TOME, et al., Debtors.**

**Raul TOME, et al., Plaintiffs,**

v.

**Peter BAER, et al., Defendants.**

**Bankruptcy No. LA 88–24174–SB.**
**Adv. No. LA 89–0630–SB.**

United States Bankruptcy Court,
C.D. California.

April 13, 1990.

James A. Knudson, West Covina, Cal., for debtor.

Dean Prober, Michael S. Polk, A Law Corp., Tarzana, Cal., for creditors.

## I. INTRODUCTION

SAMUEL L. BUFFORD, Bankruptcy Judge.

The debtors Raul and Liliana Tome ("debtors") have brought this adversary proceeding to set aside a foreclosure sale of their residence, on the grounds that they were given inadequate notice of the sale, and of the transfer of the security interest to defendants five days prior thereto. Defendants Peter Baer, I.W. Abramson and Barbara Abramson ("defendants") claim to be bona fide purchasers who purchased for value without knowledge of any defect in the notification to the debtors. Defendants counterclaim for declaratory and injunctive relief and damages.

The Court holds that, although the foreclosure sale was conducted in accordance with California Civil Code §§ 2924 *et seq.* (West 1974 & Supp.1990), it must be set aside because the defendants did not give adequate notice of the sale. The Court holds that bankruptcy law requires that a mortgagee, who sells property of the estate after obtaining relief from stay, give adequate notice of the sale, both to the debtor and to prospective purchasers. The Court further holds that the transfer of the security interest to defendants five days prior to the foreclosure sale, without mail notice to the debtors or recording of an amended notice of foreclosure, invalidated the foreclosure sale and requires that it be set aside.

## II. FACTS

Debtors executed a promissory note secured by a second deed of trust on their residence in San Gabriel, California on April 21, 1980. The note, in the amount of $25,169.37, was made payable to GECC Financial Services. GECC assigned the note and deed of trust to Homemakers Financial Service (now known as Meritor Credit Corporation ("Meritor")) on January 21, 1984. Benefact, the trustee under the deed of trust, replaced the original trustee GECC Escrow Services on December 5, 1983.

The debtors filed a Chapter 13 petition on September 19, 1986. At that time their principal asset was their residence. In their Chapter 13 statement they asserted that the value of their home was $180,000, and that it was subject to five encumbrances totalling $117,114. The debtors' schedules also disclosed more than $36,000 in unsecured debts, including a promissory note in the amount of $25,000.

Debtors' Chapter 13 plan was confirmed on November 24, 1986. It provided for the payment of $930 per month for 36 months to cure arrearages on the first and second mortgages, to pay priority taxes, and to pay 100% of the claims of general unsecured creditors. The plan further provided (pursuant to the standard form used in Los Angeles) that the revesting in the debtor of property of the estate be delayed until the

discharge of the debtor or dismissal of the case.

At the time of the filing of the Chapter 13 case, Meritor had scheduled a fore-closure sale on the house for September 22, 1986. Meritor had previously recorded a notice of default on May 16, 1986, and had published a notice of sale on August 27, 1986.

In consequence of the filing of the bank-ruptcy case, the sale date was postponed until October 22, 1986. Subsequently, Mer-itor postponed the sale five more times during the pendency of the bankruptcy case. Each postponement was for approxi-mately one month, and was announced at the date, time and place of the previously scheduled foreclosure sale. No other no-tice of any of the postponements was given to the debtor or to anyone else, including any prospective purchasers.

On March 11, 1987 Meritor was granted relief from stay to complete the foreclosure of its second deed of trust. On March 20, 1987, prior to the next scheduled fore-closure sale, defendants purchased Meri-tor's promissory note and deed of trust.

The foreclosure sale was conducted on March 25, 1987. The defendants purchased the property at the sale for a credit bid of the amount of the total indebtedness plus an overbid of $17,345. The foreclosure trustee's deed, which vested title of record in the defendants, was recorded on April 15, 1987.

While the foreclosure was in process, the debtors found a lender to refinance their home. Raul Tome contacted Meritor on March 24, 1987 to determine the balance due. Meritor informed him that the loan had been paid off. When he asked who had paid off the loan, Meritor told him that it thought that Tome had paid it. Raul Tome thereafter contacted his wife to de-termine if she had somehow paid off the loan. After she informed him that she had not done so, he contacted Meritor again on March 25, 1987. Meritor then informed Tome that his house had been sold that very morning at a foreclosure sale. The debtors had no prior notice of this sale date.

The Chapter 13 case was dismissed on October 7, 1988, and the debtors filed this Chapter 7 case on November 16, 1988.

## III. ARGUMENTS OF THE PARTIES

The debtors now come before this Court to ask that the sale to the defendants be set aside for lack of adequate notice. They allege that the oral postponements of the sale during the pendency of the bankruptcy case gave them insufficient notice, because no actual notice of the postponements was given to the Court, the Chapter 13 Trustee, the debtors' attorney or the debtors. In consequence, the debtors contend, they had no actual notice of the sale of their home on March 25, 1987, and that this violated their due process rights under the four-teenth amendment to the United States Constitution.

In addition, debtors assert that they were given inadequate notice of the trans-fer of their promissory note and deed of trust to the defendants. When debtors contacted Meritor for payoff instructions and were informed that they owed nothing, Meritor did not inform them that it had sold the note and deed of trust, and did not inform them of the identity or whereabouts of the new owners. Debtors contend that, in this manner, they were effectively pre-vented from refinancing their property, paying off their loan and avoiding the fore-closure sale. Debtors contend that this nondisclosure also violated their constitu-tional rights of due process under the four-teenth amendment.

The defendants oppose the debtors' as-sertions by arguing that actual notice of each postponement was not required. They assert that the foreclosure trustee's sale, and the postponements thereof in con-sequence of the bankruptcy filing, were conducted in accordance with California law, and that any alleged lack of notice of the sale was the result of debtors' failure to inquire from Meritor or defendants re-garding the postponed sale date. In re-sponse to debtors' contention that there was no disclosure of the purchase of the note and trust deed, defendants assert that the recording of the assignment gave con-

structive notice of the assignment to all persons, including debtors.

## IV. ANALYSIS

The Court finds that bankruptcy law, which preempts California foreclosure law pursuant to the supremacy clause of the United States Constitution, requires better notice for the sale of property belonging to a debtor's estate than was given in this case. In addition, the Court holds that Meritor's provision of false and misleading information to the debtors concerning the payoff of the debt on the eve of foreclosure was binding on the defendants, and prohibited them from conducting a valid foreclosure sale. In consequence, the Court does not reach the debtors' due process attack upon the conduct of defendants and Meritor in connection with the transfer of the encumbrance to defendants, or on the lack of actual notice to debtors of the various postponements of the foreclosure sale.

### A. *California Trust Deed Sale Procedure*

The California procedure for exercising a power of sale in a deed of trust is set forth in Cal.Civ.Code §§ 2924–2924h (West 1974 & Supp.1990). The statute is very complex and detailed: in the Standard California Codes edition it runs more than eleven pages. No nonjudicial foreclosure of a security interest in real property is permitted except in compliance with this statutory system. Cal.Civ.Code § 2924 (West 1974 & Supp.1990). A creditor who proceeds with non-judicial foreclosure is prohibited from recovering a deficiency judgment. Cal.Civ. Proc.Code § 580d (West 1976 & Supp.1990).

Upon a breach of the obligation for which the deed of trust provides security, section 2924 permits the holder of the deed of trust to record a notice of default in the county recorder's office, and to give notice of the default to the property owner and other lienholders. This notice must identify the deed of trust, state that a breach has occurred, state the nature of the breach and the trustee's election to sell, and set forth the conditions for curing the breach (if applicable) in the exact language set forth in the statute.[1]

Section 2924b specifies the means by which notice is to be given, and designates

---

1. Cal.Civ.Code § 2924c(b)(1) (West 1974 & Supp.1990) provides:

   The notice, of any default described in this section, recorded pursuant to Section 2924, and mailed to any person pursuant to section 2924b, shall begin with the following statement, printed or typed thereon:
   "**IMPORTANT NOTICE** [14–point boldface type *if printed or in capital letters if typed*] **IF YOUR PROPERTY IS IN FORE-CLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** [14–point boldface type if printed or in capital letters if typed] and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is _____ as of _____ (Date), and will increase until your account becomes current. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay the amount stated above. However, you and your beneficiary or mortgagee may mutually agree in writing pri-

   or to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).
   Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.
   To find out the amount you must pay, or to arrange for payments to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
   _____ (Name of beneficiary or mortgagee)
   _____ (Mailing address)
   _____ (Telephone)
   If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
   Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

the parties entitled to receive notice. A request for a copy of any notice of default and of any notice of sale under a deed of trust may be filed in the county recorder's office. Such a request may also be contained in the deed of trust. If a trust deed does not contain a request of the trustor or mortgagor for special notice, and if no request for special notice by the trustor or mortgagor has subsequently been recorded, a copy of the notice of default must be published in a newspaper of general circulation, commencing ten days after the recordation of the notice of default. In lieu of publication, a copy of the notice of default may be personally delivered to the trustor or mortgagor.

If the arrearage remains unpaid after three months, the beneficiary of the deed of trust may post and publish a notice of sale at least twenty days before the sale date. The notice of sale must be recorded at least fourteen days before the sale. The foreclosing party must also give notice to the mortgagor of the foreclosure sale. Under section 2924c the owner and junior lienholders have a right to cure the default by paying the arrearage due up to five days before the date of sale.

Section 2924g provides for the postponement of a sale in three kinds of circumstances. First, subsection (c)(1) permits a trustor to obtain a single postponement for one business day to permit the trustor to obtain cash sufficient to pay the debt in full or to bid at the sale. Second, the beneficiary of the trust deed is permitted to request a postponement of the sale for any reason. The statute permits only three postponements under the second category: any sale thereafter requires the publication of a new notice of sale.

Subsection (c)(2) also permits the postponement of a sale upon the order of any court of competent jurisdiction, where stayed by operation of law, or by mutual agreement. California law imposes no maximum for the number of postponements permitted under this provision. *United States Cold Storage v. Great Western Savings & Loan Association,* 165 Cal. App.3d 1214, 1227–30, 212 Cal.Rptr. 232 (1st Dist.1985); *California Livestock Production Credit Association v. Sutfin,* 165 Cal.App.3d 136, 140–42, 211 Cal.Rptr. 152 (3d Dist.1985). Secured creditors routinely rely upon this provision (as in this case) to postpone a foreclosure sale for a month at a time while a bankruptcy case is pending. Such a postponement does not violate the automatic stay resulting from the filing of a bankruptcy case. *First National Bank v. Roach (In re Roach),* 660 F.2d 1316, 1318–19 (9th Cir.1981) (dictum); *Martir Lugo v. de Jesus Saez (In re de Jesus Saez),* 721 F.2d 848, 853 (1st Cir.1983); *United Mutual Savings Bank v. Doud (In re Doud),* 30 B.R. 731, 733–34 (Bankr.W.D. Wash.1983). It is not unusual for the Court to see cases where foreclosure sales have been rescheduled as many as twenty, thirty or forty times under this provision.

Subsection 2924g(d) requires that notice of any postponement be given: California law does not permit the postponement of a foreclosure sale under a deed of trust without notice. The statute further specifies what notice is required:

The notice of each postponement and the reason therefor shall be given by public declaration by the trustee at the time and place last appointed for sale. Such a public declaration of postponement shall also set forth the new date, time, and place of sale and the place of sale shall be the same place as originally fixed by the trustee for the sale. No other notice of postponement need be given.

Cal.Civ.Code § 2924g(d) (West 1974 & Supp.1990).

In three types of circumstances the foreclosure sale may be postponed without the knowledge of the mortgagor: (1) a postponement by the trustee; (2) a postponement by order of court, and (3) a postponement by operation of law. A postponement

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.** [14–point boldface type if printed or in capital letters if typed]"

Unless otherwise specified, the notice, if printed, shall appear in at least 12–point boldface type.

by order of court usually results from an injunction that prohibits the conduct of the sale. A few hundred such stays, at most, are granted in a year by courts in California. A trustee occasionally postpones a foreclosure sale, usually at the request of the beneficiary.

Probably 99% of California continuances of foreclosure sales result from the automatic stay imposed by the filing of a bankruptcy case. These continuances are required by Bankruptcy Code § 362(a), which stops virtually all debt collection actions against a bankruptcy debtor. In 1988 there were 97,740 bankruptcy cases filed in California, and approximately 75% of them involved real estate in foreclosure under a deed of trust. Notice of sale had been published in at least half of these cases. Perhaps 40% of these cases involved multiple deeds of trust in the bankruptcy case, where the debtor either owned multiple pieces of property or had multiple encumbrances on a single piece of property. Thus approximately 60,000 continuances of foreclosure sales occurred in California in 1988, and a similar number in 1989, in consequence of bankruptcy case filings. Under the California statute, no notice of any of these continuances was required.

Clearly the bankruptcy exception is the principal exception to the notice requirement of the California foreclosure statute. Absent the statutory exception, this would not occur.

Furthermore, it is not only an occasional continuance that results from a bankruptcy filing. The general practice in the California creditor community is to continue a foreclosure sale for a month at a time, so that several continuances, at a minimum, are necessary before the sale takes place. In this case, for example, the sale was continued six times before the property was sold. This Court has seen numerous cases where a foreclosure sale has been postponed twenty, thirty or forty times, solely by announcement of the continuance at the date, time and place set for the prior sale. Absent the exception provided by section 2924g(c), the Court believes that such a practice could not have developed.

Because the California statute does not require that notice be given to the mortgagor of any postponement resulting from the operation of law, such as a postponement in consequence of the automatic stay resulting from the filing of a bankruptcy petition, bankruptcy debtors commonly lose track of the dates of pending foreclosure sales. Once they lose track of the next pending foreclosure sale, they often have considerable difficulty in finding out when the next sale is scheduled. Because notes secured by residential real estate are frequently sold in the secondary market, a debtor frequently has never done business with and does not even know the identity of either the beneficiary or the trustee under the deed of trust. A debtor often sends the monthly payments to a local servicing agent, which may or may not be the original lender who made the loan to the debtor. Indeed, the owner of the deed of trust may change several times before foreclosure is initiated, and the notice of default may come to a mortgagor from a total stranger. It is a very rare debtor who knows enough about property recording procedures to check to see whether the original mortgagee has sold the mortgage to another party, and a much rarer debtor who would think to check the property records for this information absent all actual notice of any such transfer.

In the case at bar the foreclosure sale was postponed six times.[2] At each appointed sale, the trustee announced to those in

---

**2.** The facts in this case are not as complicated as some that come before the Court. The foreclosure was postponed only six times. Debtors' trust deed was transferred only once by their original mortgagee to Meritor (which was then known as Homemakers Financial Service), which then obtained relief from stay. Only then did Meritor sell the note and deed of trust to the defendants. In contrast, security interests in real property are frequently transferred several times between the time that they are granted by a debtor and when foreclosure begins. A debtor is frequently unaware of the transfers because the original lender continues to serve as the servicing agent for the various owners of the security interest, and no actual notice of the transfer is given to the debtor. In addition, as noted supra, foreclosure sales are frequently postponed many more times than in this case.

attendance (if any) the new date, time, and place for the postponed sale. No other notice was given to the debtors or to prospective purchasers, apparently because none was required by section 2924g. Firm in their conviction that the automatic stay would stave off any attempts to sell their residence, debtors did not attend any of the scheduled sales. They were not aware that the sale was repeatedly postponed over the several months between the date that they filed their bankruptcy case and the date that Meritor obtained relief from the automatic stay. They also did not know that the foreclosure sale was scheduled for the day after they contacted Meritor to learn the payoff amount for their refinancing. All of this was permitted under California law.

### B. *Bankruptcy Law Notice Requirements*

■ Once relief from stay has been granted, secured creditors have traditionally assumed that they may proceed with foreclosure under state law, uninhibited by any further limitations of bankruptcy law. The bankruptcy statute and rules are silent on this subject. The Court finds that this assumption is not warranted: a secured creditor may not foreclose on property of the estate without giving further notice beyond the minimum required by California law.

Upon the filing of a bankruptcy case a debtor's property, including the debtors' home at issue in this case, becomes property of the estate. Bankruptcy Code § 541(a).[3] The granting of relief from stay does not terminate the estate's ownership interest in the property. Insofar as there is equity in the property, this equity continues to belong to the creditors of the estate or to the debtor.[4]

Technically, the surplus value of the debtors' home after encumbrances and the homestead exemption does not belong to the unsecured creditors in a Chapter 13 case. Under Chapter 13 a debtor bargains to keep the assets as of the date of filing, that would be liquidated and distributed to creditors in a Chapter 7 case, in exchange for paying debtor's excess income over expenses during the life of the plan (typically three years) to the creditors. Chapter 13 protects the creditors by requiring that they recover at least as much as they would in a Chapter 7 liquidation. *See* section 1325(a)(4).[5]

A Chapter 13 debtor thus retains the primary interest in the surplus beyond the exemption. However, it is the debtor's retention of this interest that makes it possible for the creditors to be paid from the debtor's earnings. Where, as here, a secured creditor appropriates for itself the real estate equity, a debtor is typically forced (like the debtors here) to turn to a Chapter 7 liquidation. As in this case, the unsecured creditors can recover nothing in the Chapter 7 case unless the real estate or its value can be recaptured by the estate.

While the confirmation of a chapter 13 plan revests property of the estate in the debtor except as otherwise provided in the plan or the confirmation order,[6] the plan in

---

**3.** Bankruptcy Code § 541(a), 11 U.S.C.A. § 541(a) (West 1979 & Supp.1990) provides:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

**4.** Under chapter 13 the debtor is entitled to the excess value to the extent of any applicable exemption, and is entitled to any surplus in the estate after all creditors are paid.

**5.** Bankruptcy Code § 1325(a), 11 U.S.C.A. § 1325(a) (West 1979), provides in relevant part:

Except as provided in subsection (b), the court shall confirm a plan if—

. . . . . . . .

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date. . . .

**6.** Bankruptcy Code § 1327(b), 11 U.S.C.A. § 1327(b) (West 1979), provides:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

these debtors' chapter 13 case specifically postponed the revesting of the property in the debtor until the entry of a discharge or the closing of the case.[7]   In consequence, the debtors' home continued to be property of the estate when relief from stay was granted, and at the time of the foreclosure sale.

This is not a case where the unsecured creditors had no interest in the proceeds of the foreclosure sale.   While the debtors qualified for a $45,000 homestead exemption under California law,[8] there was more than $60,000 in equity in the property when the Chapter 13 case was filed.   Thus the general unsecured creditors had an interest in more than $15,000 of this equity.   There are general unsecured creditors in this case:  The chapter 13 schedules disclosed a total of more than $48,000 in unsecured debt (including those holding security junior to defendants in debtors' home), and these creditors filed timely claims in the Chapter 13 case totalling $32,516.39.

Bankruptcy Code § 363(b)[9] provides control over the sale of property of the estate where the sale is conducted by a trustee. It requires "notice and a hearing" (as defined in Bankruptcy Code § 102(1)[10]) before a trustee may sell such property. A debtor in possession under Chapter 13 of the Bankruptcy Code is subject to the same statutory restraint.[11]   While the Bankruptcy Code does not specify that another party who sells property of the estate is subject to the same requirement, it does not follow that no notice is required.   The Ninth Circuit Bankruptcy Appellate Panel has stated in dictum that a secured creditor who forecloses under California law after obtaining relief from the automatic stay must at least republish the notice of sale.   *Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 436 (9th Cir. BAP 1985).

There are good bankruptcy policy reasons to require some appropriate notice before a creditor sells property of the estate after obtaining relief from the automatic stay.   Any excess value in the security beyond the secured claim of the foreclosing creditor (and any secured creditor with a senior lien on the property at issue) belongs to the unsecured creditors or to the debtor.

Unsecured creditors (and junior secured creditors) may be able to protect their rights in the property at issue if the foreclosing creditor is required to give them notice of a relief from stay motion, or to give them timely notice of any subsequent foreclosure sale.   However, neither the

---

7. The postponement of the revesting of the property of the estate in the debtor until the debtor's discharge or the closing of the case is a standard part of the printed chapter 13 plan form that is mandatory for chapter 13 cases filed in Los Angeles.

8. Cal.Civ.Proc.Code § 704.730(a) (West 1987) provides:

   The amount of the homestead exemption is one of the following:
   (1) Thirty thousand dollars ($30,000) unless the judgment debtor or spouse of the judgment debtor who resides in the homestead is a person described in paragraph (2) or (3).
   (2) Forty-five thousand dollars ($45,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead a member of a family unit who owns no interest in the homestead or whose only interest in the homestead is a community property interest with the judgment debtor.

9. Bankruptcy Code § 363(b)(1), 11 U.S.C.A. § 363(b)(1) (West Supp.1990), provides:

The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

10. Bankruptcy Code § 102(1), 11 U.S.C.A. § 102(1) (West 1979), provides:
    "after notice and a hearing", or a similar phrase—
    (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
    (B) authorizes an act without an actual hearing if such notice is given properly and if—
    (i) such a hearing is not requested timely by a party in interest; or
    (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act. . . .

11. Bankruptcy Code § 1303, 11 U.S.C.A. § 1303 (West 1979), provides:
    "[T]he debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b). . . ."

Bankruptcy Code nor the rules explicitly require any such notice.[12]

Some protection, however, is required to assure that the interests of unsecured creditors (including junior secured creditors who may be foreclosed out) and of the debtor under bankruptcy law are protected. Under California law a property owner is entitled to any surplus resulting from a foreclosure sale. Where the property subject to foreclosure belongs to the estate in a pending bankruptcy case, the surplus is property of the estate, and must be turned over to the estate for the benefit of unsecured creditors. Some procedure is required to assure that a fair foreclosure procedure is followed to give the estate a reasonable opportunity to realize its equity, if any, in the property.

The Court holds that a secured creditor must at least republish its notice of sale and give notice to the owner, as required by Cal.Civ.Code § 2924 *et seq.*, before it may conduct a non-judicial foreclosure sale of property of the estate. This decision accords with the dictum in *Ellis, supra.*

The republication of notice to creditors and the provision of notice to the debtor after relief from stay is granted will not unduly hinder the foreclosure process. A maximum of three weeks is required to provide such notice. Because of the uncertainty in predicting the date of entry of an order for relief from stay, the foreclosing creditor usually must wait some or all of this period before the next scheduled foreclosure sale. Thus in most cases the republication of a notice of sale will result in little or no additional delay.

There is some authority to suggest that a foreclosing creditor that is selling property of a bankruptcy estate after obtaining relief from the automatic stay must meet the standards of commercial reasonableness for such a sale. In *Ruebeck v. Attleboro Savings Bank (In re Ruebeck),* 55 B.R. 163 (Bankr.D.Mass.1985), the court found that a foreclosing creditor must meet this standard in certain circumstances. The court stated:

> Measures must be instituted to assure that foreclosure sales are held under conditions which have the most chance of producing a price that is close to fair market value. After all, the pervading intent not only behind the Bankruptcy Code, but a basic concept of all extendors of credit, is equitable distribution. To allow a poorly noticed sale to be upheld is a waste of the estate's assets and results in an unwarranted loss to creditors. The debtor is usually unconcerned, since he loses the property in any event, and any deficiency or remaining debts are probably discharged. So that, in the long run, it is the other creditors that will suffer from practices which tend to result in unrealized equity.

After having stated the foregoing, however, the court set aside the foreclosure sale there at issue principally on the authority of Massachusetts state law, which the court found to impose a commercial reasonableness requirement for a foreclosure sale absent bankruptcy.

Two courts have applied the commercial reasonableness standard to foreclosure sales that were conducted *prior* to the filing of a bankruptcy case, where the property had not yet become property of the estate.[13] *Lindsay v. Beneficial Reinsurance Co. (In re Lindsay),* 98 B.R. 983, 991–92 (Bankr.S.D.Cal.1989); *General Industries Inc. v. Shea (In re General Industries, Inc.),* 79 B.R. 124, 132–34 (Bankr. D.Mass.1987). A stronger case can be made for imposing such a requirement on a creditor who sells property of the estate *after* the case has been filed. The Court does not reach this issue, however, because

---

**12.** The Court is reluctant to impose any additional notice requirements upon secured creditors seeking relief from stay. This issue has been widely debated in this district in connection with the recent revision of the local rules, and the district has decided not to impose any further notice requirements upon parties moving for relief from stay.

**13.** *See, also, Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980), and its progeny, which have held that a foreclosure sale that realizes less than 70% of the value of the property is a fraudulent conveyance. This rule has never been applied in California or the Ninth Circuit. *See, generally, Verna v. Dorman (In re Verna),* 58 B.R. 246, 248–52 (Bankr.C.D. Cal.1986).

Meritor failed to give even the minimal notice to the debtors and to the public required by bankruptcy law under existing Ninth Circuit standards.

It is not clear, however, that the foreclosure sale may be set aside because of the insufficient notice. It may be possible to provide for the interests of the unsecured creditors and debtors' homestead exemption rights by the payment of money damages. In consequence, the Court turns to the impact of the sale of the security interest by Meritor to defendants with no notice except the recordation of the assignment of the deed of trust.

### C. Notice of Sale of the Security Interest

■ Debtors would have refinanced their home and avoided the foreclosure sale altogether if only they had been informed of the transfer of their note and trust deed to defendants, which occurred five days before the foreclosure sale. Because of this transfer, debtors were unable to determine the exact amount of the payoff, so that the refinancing could close before the foreclosure sale. Debtors contend that this transfer, in the circumstances of this case, violated their due process rights.

The Court does not reach debtors' due process arguments, because it finds that the defendants failed to discharge their obligations to debtors under California law in connection with the transfer in two respects. First, the transfer rendered inaccurate the notice of default that was recorded by Meritor, and defendants did not record or mail to the debtors an amended notice of default. Second, defendants left Meritor as the only party known to the debtors to contact concerning the loan, and Meritor provided false and misleading information concerning the loan that prevented the debtors from paying it off prior to the foreclosure sale. In consequence, the foreclosure sale must be set aside.

### 1. Recordation and Mailing of Notice of Transfer

Cal.Civ.Code § 2924c(b)(1) (West Supp. 1990) sets forth the exact language of the notice that must be recorded and mailed to

a grantor of a deed of trust to commence a non-judicial foreclosure.[14] Strict compliance with the statutory requirements is obligatory: any statutory deficiency requires that the sale be set aside, provided that the purchaser is not a bona fide purchaser for value without notice of the deficiency. *Anderson v. Heart Federal Savings*, 208 Cal.App.3d 202, 211, 256 Cal.Rptr. 180 (3d Dist.1989), *modified*, 208 Cal. App.3d 1531f (3d Dist.1989). Substantial compliance with the statutory language is not sufficient: the statute requires that the notice contain the exact language prescribed. One of the paragraphs that must be set forth in haec verbae is:

> To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
> _____ (Name of beneficiary or mortgagee)
> _____ (Mailing address)
> _____ (Telephone)

The purpose of this portion of the notice is to assure that a property owner who decides to cure the default by refinancing the property will be able to contact the authorized representative of the holder of the security interest to arrange a payoff. Property owners frequently cure monetary defaults in this manner.

The failure to comply with the procedural requirements of California statute does not affect the validity of a sale to a bona fide purchaser. *Napue v. Gor–Mey West, Inc.*, 175 Cal.App.3d 608, 615, 620–21, 220 Cal.Rptr. 799 (2d Dist.1985). Defendants claim that they are bona fide purchasers, and thus that the sale to them cannot be set aside. It is clear that defendants cannot qualify as good faith purchasers in this case. The evidence is undisputed that debtors had in fact arranged to refinance their loan owing to Meritor, and would have paid Meritor in full prior to the foreclosure. They were prevented from doing this solely by defendants' purchase of the note and deed of trust from Meritor without any notice to the debtors. Having caused the lack of notice to the debtors, defendants cannot now claim bona fides.

---

**14.** For the complete text of the required statutory notice, *see* footnote 1.

■ The Court holds that a party that purchases a security interest in property as to which a notice of default has been recorded is required to record and mail to the trust deed grantor an amended notice of default. The Court adopts mail notice as the required form of notice, because this is the kind of notice required under California law for a notice of default after it is recorded. California law does not require the actual receipt by a trustor of a notice of default. *Lupertino v. Carbahal,* 35 Cal. App.3d 742, 746, 111 Cal.Rptr. 112 (3d Dist. 1973). A requirement of actual notice could only be imposed on due process considerations, an issue that the Court does not reach.

Meritor's sale of the note and deed of trust to defendants in this case without mail notice to the debtors made the notice of default inaccurate. The notice was thus rendered ineffective, and the foreclosure procedure no longer complied with California statute. Because strict compliance with the statute is required for a valid non-judicial foreclosure, the foreclosure must be set aside.

The Court does not hold that the sale of a security interest by the security holder during a foreclosure requires that the foreclosure be restarted from the beginning. The Court does hold that an amended notice of default, including the amended information required by the statute, must be recorded and mailed in the same manner as the original notice before a valid foreclosure sale may take place. The recording and mailing must be completed a reasonable time before a foreclosure sale may take place. The Court adopts a presumption that such notice given 21 days before the sale is reasonable.

2. *False and Misleading Information Provided by Meritor*

Furthermore, a lender has a duty under California law to provide accurate information to a borrower when the borrower requests information concerning the amount due on a loan. *Anderson v. Heart Federal Savings,* 208 Cal.App.3d 202, 216–17, 256 Cal.Rptr. 180 (3d Dist.1989), *modified,* 208 Cal.App.3d 1531f (3d Dist.1989). In this case Meritor failed to provide accurate information to Mr. Tome when he called to arrange a payoff of the loan on the day before the foreclosure sale. Because defendants failed to provide the proper notice to the debtors of their purchase of the security interest from Meritor, they left Meritor as their ostensible or apparent agent to provide the proper information to the debtors concerning the loan, and they are bound by the misrepresentations and nondisclosures of Meritor. *Cf. Lupertino v. Carbahal,* 35 Cal.App.3d 742, 749, 111 Cal.Rptr. 112 (3d Dist.1973) (trustee under deed of trust who communicates with trustor at address different from that given in deed of trust binds itself and beneficiary to recognize the new address, even though new address has not been recorded). The foreclosure sale must be set aside on these grounds also. *Id.*

## V. CONCLUSION

In conclusion, the Court holds that the California foreclosure statute falls short of the requirements of bankruptcy law, insofar as it permits a secured creditor to conduct a foreclosure sale of property of the estate after obtaining relief from the automatic stay, where the foreclosure sale has been postponed in consequence of the filing of the bankruptcy case. The Court holds that the minimum notice required for sale of property of the estate after the grant of relief from the automatic stay is the republication of the notice of sale with actual notice to the debtor and junior lienholders, as provided by the California foreclosure statute.

The Court further holds that a purchaser of a security interest in property of the estate that is in foreclosure must record and mail to the owner of the property an amendment to the notice of default before a valid foreclosure sale may be conducted under California law. Such recording and mailing must be completed a reasonable time before the foreclosure sale. The Court adopts a presumption that 21 days notice is reasonable.

■ Finally, the Court holds that a foreclosure sale must be set aside where a lender or its agent (including an apparent or ostensible agent) has provided false or

misleading information concerning the pay-off of a note secured by a deed of trust after the lender has sold its position to a purchaser without giving mail notice to the debtor.

Neither defendants nor their predecessor Meritor republished their notice of sale or gave notice to debtors of the postponed foreclosure sale date. In addition, the notice of default was not amended to correct the inaccuracies resulting from the transfer to defendants of the security interest. Furthermore, debtors were prevented from paying off the indebtedness because they were not informed of the transfer that occurred just a few days before the foreclosure sale, and the transferor gave them false and misleading information concerning the payoff on the day before the sale, thus preventing them from paying off the loan and avoiding the foreclosure. For these reasons the foreclosure sale in this case is invalid and must be set aside.

The Court sets a further hearing on this adversary proceeding on April 24, 1990, at 10:00 a.m.