15 F.3d 1086
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re Robert H. LANDRY, Debtor-Appellant.
Robert H. LANDRY, Appellant,
v.
CHEVY CHASE FEDERAL SAVINGS BANK; and David Skelton,
Trustee, Appellees.
 Nos. 92-55726, 92-55728.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1993.
Decided Jan. 20, 1994.
 
 1
 Before: FLETCHER and D.W. NELSON, Circuit Judges, and WILL,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant-debtor Robert Landry appeals an order of the district court, affirming the bankruptcy court's orders lifting an automatic stay of appellee-creditor Chevy Chase Federal Savings Bank's foreclosure proceedings and denying confirmation of Landry's proposed Chapter 13 plan and dismissing his petition.
 
 
 4
 We have jurisdiction to hear Landry's timely appeal pursuant to 28 U.S.C. Sec. 158(d). We affirm.
 
 BACKGROUND
 
 5
 On December 28, 1984, Landry borrowed $176,400 from Chevy Chase, in order to purchase a residential 4-plex in Mesa, Arizona. Landry made regular monthly mortgage payments until September, 1990, at which point he began defaulting on the payments. On December 27, 1990, Chevy Chase gave notice that it had scheduled a foreclosure sale of the 4-plex, for April 2, 1991. On March 25, 1991, Landry filed a Chapter 13 bankruptcy petition in the Bankruptcy Court for the Southern District of California. That filing resulted in an automatic stay of the foreclosure sale, pursuant to 11 U.S.C. Sec. 362(a).
 
 
 6
 On June 7, 1991, Chevy Chase filed a motion for relief from the automatic stay. The motion was sent to Landry on June 13, 1991, but he alleges that he was out of state, received his mail late, and was not made aware of the motion until July 3 or 4, 1991. Landry subsequently called the calendar clerk and managed to obtain a hearing date of July 24, 1991. The request was not made within the required 14-day period. See Local Bankruptcy Rule 4001-3(a).
 
 
 7
 At the hearing, the bankruptcy judge granted Chevy Chase relief from the automatic stay. This was based primarily on a finding that the 4-plex did not generate enough income to cover its own mortgage payments. In terminating the automatic stay, however, the judge simply signed and filed a proposed order previously submitted by Chevy Chase, titled "Order Terminating Automatic Stay (Non-Contested Matter)." This proposed order was submitted after the 14-day period for Landry's reply had passed, on the assumption that he was not going to oppose Chevy Chase' motion. Thus, although the Bankruptcy Judge's decision to terminate the automatic stay was reached on the merits, the form of the order was that of a default judgment.
 
 
 8
 On August 8, 1991, Chevy Chase carried out the foreclosure sale of Landry's 4-plex. Chevy Chase itself was the only bidder, and took the property.[1] Chevy Chase has subsequently sold the property to a third party.
 
 
 9
 Meanwhile, on August 6, 1991, the bankruptcy court denied confirmation of Landry's proposed Chapter 13 plan and dismissed his bankruptcy petition. The bankruptcy judge believed Landry would be incapable of making the necessary monthly payments, and that the plan had been submitted in bad faith (Landry had failed to make three out of four post-petition payments of $100 each).
 
 
 10
 Landry appealed both the termination of the automatic stay and the denial of his Chapter 13 plan to the district court. The court held Landry's appeal moot because of Landry's failure to obtain a stay of the foreclosure sale pending appeal. The court, on an alternate basis, also affirmed the termination of the automatic stay, primarily on the theory that Landry's response to Chevy Chase' motion was not made until after the 14-day period specified by local rule 4001-3(a) had expired. In the court's opinion, the order terminating the stay as a "noncontested matter" was therefore proper. Finally, the district court also affirmed on the merits the rejection of Landry's Chapter 13 plan and the dismissal of his petition, noting that the bankruptcy judge had based his ruling on both lack of good faith and inability to keep to the payment schedule.
 
 DISCUSSION
 
 11
 We independently review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. 28 U.S.C. Sec. 157(b)(1); In Re Professional Investment Properties of America, 955 F.2d 623, 626 (9th Cir.), cert. denied, 113 S.Ct. 63 (1992); Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986).
 
 I. Relief from the Automatic Stay
 A. Mootness
 
 12
 Chevy Chase asks us to find Landry's appeal moot because it has sold the 4-plex to a third party. "[A] debtor's failure to obtain a stay normally renders the appeal moot," because under 11 U.S.C. Sec. 363(m), our ruling on appeal cannot affect the rights of a good faith purchaser unless the sale was stayed pending appeal. In re Mann, 907 F.2d 923, 926 (9th Cir.1990). If a property is sold because a stay has not been secured, an appellate court is powerless to grant effective relief, and the appeal must be considered moot. Id.; Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1424 (9th Cir.1985).
 
 
 13
 Landry argues that his case fits into two established exceptions to the bankruptcy mootness rule.
 
 
 14
 First, an appeal will not be moot where the sale was not made in "good faith," pursuant to 11 U.S.C. Sec. 363(m). In re Onouli-Kona Land Co., 846 F.2d 1170, 1173 (9th Cir.1988). Landry cites In re Shamblin, 890 F.2d 123 (9th Cir.1989), in which the court held a sale was not made in good faith, and hence the appeal was not moot, even though no stay pending appeal had been obtained. Landry argues that Chevy Chase acted in bad faith in moving to sell his property almost immediately after the stay was lifted, and claims that Chevy Chase's attorney falsely told him no sale had been scheduled.[2]
 
 
 15
 The second relevant exception to the mootness rule is where "state law would otherwise permit the transaction to be set aside." In re Mann, 907 F.2d at 926; In re Worcester, 811 F.2d 1224, 1228 (9th Cir.1987). This exception requires federal courts of appeals to go into the merits of possible state law claims, and indeed sometimes to award relief based on them.[3] Landry argues that Chevy Chase gave insufficient public notice of the postponement of sale (from July 25, 1991, to August 8, 1991), which is "fatal to a Trustee's sale" under California and Arizona law. See A.R.S. Sec. 33-810(b) (provisions for postponement notice); Appellant's Reply Br. at 11.
 
 
 16
 Landry also argues that the foreclosure sale should be set aside on the authority of In re Tome, 113 B.R. 626 (Bkrtcy.C.D.Cal.1990). Tome held that a creditor who has obtained relief from the automatic stay may not immediately proceed with a foreclosure sale. Instead, the creditor must republish the notice of sale after the stay has been lifted, and must insure that the debtor and junior lienholders are given actual notice of the intended sale. Id. at 632-37. While Tome does bolster Landry's argument, it held that the proper remedy for an insufficiently noticed sale was damages, not setting aside the sale.
 
 
 17
 The merits of Landry's arguments in respect to the right to set aside the sale under state law, are best resolved in his state court action to set aside Chevy Chase' foreclosure sale. Rather than rule on mootness, which would require us to decide the merits of these state law claims, we find it the wiser course to resolve the appeal of the relief from automatic stay on the merits. Nothing in this disposition affects the rights Landry may have under state law.
 
 B. Merits
 
 18
 Under 11 U.S.C. Sec. 362(d), the bankruptcy court can grant relief from the automatic stay "for cause." Cause includes a debtor's lack of equity in a property, debtor's failure to make post-petition mortgage payments, and inadequate protection of a creditor's interest in the property. In re Ellis, 60 B.R. 432 (9th Cir.BAP 1985). The bankruptcy court granted Chevy Chase's motion for relief from the automatic stay because it found that "this property, even under the best of circumstances, can't make the debt service on it." Transcript of Hearing, July 24, 1991, at 5. The court specifically declined Chevy Chase's suggestion that it grant the stay because Landry had failed to respond to Chevy Chase's motion within the 14 days required by Local Bankruptcy Rule 4001-3(a).
 
 
 19
 Landry failed to make over $4000 in post-petition mortgage payments (in addition to his pre-petition default of over $16,000). Further, Landry's mortgage was only six years old and he had developed little if any equity in the property. Finally, while the judge's finding that the rent generated by the property would be insufficient to service its debt might not be completely correct (see the discussion of Landry's "cram-down" plan below), the finding that Landry would be unable to make his mortgage payments was not clearly erroneous.
 
 
 20
 In light of these factual findings, the judge's decision to grant Chevy Chase's motion for relief from the automatic stay was correct.
 
 II. Landry's Chapter 13 Plan
 
 21
 By its order of August 1, 1991 the bankruptcy court denied confirmation of Landry's Chapter 13 plan and dismissed his case. Landry appeals that order.
 
 
 22
 11 U.S.C. Sec. 1325(a) provides that a Chapter 13 plan shall be confirmed if
 
 
 23
 ... (3) the plan has been proposed in good faith and not by any means forbidden by law ... (6) the debtor will be able to make all payments under the plan and comply with the plan.
 
 
 24
 The bankruptcy judge based his denial of confirmation on the grounds that Landry's plan would meet neither of these criteria. We review these findings of fact for clear error. Professional Investment Properties, 955 F.2d at 626.
 
 
 25
 At the hearing before the bankruptcy court, counsel for Landry suggested that to deny his plan would be "like the Tyson fight in which they TKO the man who is still on his feet. We'll never know [if he could have made it]." Transcript of Hearing, July 25, 1991, at 7. The court responded,
 
 
 26
 this gentleman is down and he's going to be counted out here because I think the code is clear that this chapter is only available for those with a regular source of income so that they can make regular payments.
 
 
 27
 Id.
 
 
 28
 Landry's income came from two sources: his job as a self-employed automobile salesman, and his two rental properties. In his Chapter 13 plan, he claimed he would receive $1300 per month from the former, and $2215 per month from the latter. At the time of filing, he had about $17,000 in outstanding credit card debts, as well as the mortgage debt on the two properties (the mortgage payments on the Chevy Chase property alone were $1950/month, and there was approximately $20,000 in pre- and post-petition mortgage arrearages). He had one dependent, a three-year old daughter.
 
 
 29
 As part of his plan, Landry proposed a "cram-down" of the amount of the debt secured by the mortgage on the Chevy Chase property. This would be based on the property's drop in value from around $170,000 at purchase date to $130,000 at the time of the plan. 11 U.S.C. Sec. 506(a); United States v. Ron Pair Enter., 489 U.S. 235, 239 (1989) ("[11 U.S.C. Sec. 506(a) ] provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured"). The cram-down envisioned by Landry's plan had the mortgage payments recomputed on the $130,000 amount,[4] and at a lower interest rate, so that the new payments would be between $850 and $1150 per month.
 
 
 30
 Landry contends the bankruptcy court never considered the effects of the cram-down. It is true that the bankruptcy court did not mention the cram-down arrangement in its oral opinion. Moreover, the bankruptcy court found that the rent from the 4-plex would not be enough to service the mortgage payment. But this would not necessarily be true under the cram-down arrangement: the property would generate $1250 per month available for debt service, enough to cover the cram-down mortgage payments of $850--$1150.
 
 
 31
 But taken in the context of Landry's situation as a whole, the bankruptcy judge's findings are not clearly erroneous. First, both of Landry's sources of income were subject to fluctuation.[5] Second, even by his own optimistic estimates, and granting his cram-down plan, his income would scarcely cover his two sets of mortgage payments, his proposed $300 per month payment to unsecured creditors, and his budget for himself and his daughter. Moreover, his plan fails to take into account some substantial expenses: it neither considers the operating expenses of the two rental properties,[6] nor accounts for the necessity of paying federal, state, and local income and property taxes. See In re Langguth, 52 B.R. 572 (Bankr.N.D.Ill.1985).
 
 
 32
 In sum, there is considerable support in the record for the bankruptcy judge's determination that Landry would not be able to make his payments for the duration of the Chapter 13 plan.
 
 
 33
 Moreover, the judge's finding was based not only on Landry's questionable ability to pay in the future, but also on his failure to make three out of four post-petition payments due to the unsecured creditors. See 11 U.S.C. Sec. 1322(b)(5) (payments while bankruptcy case is pending).[7] The judge apparently concluded that such difficulty in making $100 payments would only increase for the much greater payments required under the plan. The judge also apparently considered Landry's failure to pay as evidence that his plan was not proposed in good faith:
 
 
 34
 There's only been one payment [out of four]. Now he comes in and says he's going to pay $300 a month. But I think there was no excuse for not having paid the $100, so I don't see how the court can then conclude that he has more sincerity with the $300 burden.
 
 
 35
 Transcript of Hearing, July 25, 1991, at 12.
 
 
 36
 In sum, the bankruptcy judge made a finding based on the extent and reliability of Landry's sources of income, the size of the debts he would have to service, and his failure to make even minimal post-petition payments. The judge's findings of fact were not clearly erroneous. We affirm his denial of confirmation of Landry's Chapter 13 plan and the dismissal of his petition.
 
 
 37
 AFFIRMED.
 
 
 
 *
 Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In the six years since Landry purchased the 4-plex for over $186,000, its value had declined steeply. Landry's Chapter 13 plan estimated its value at around $130,000. Chevy Chase bought it at the foreclosure sale for $106,250
 
 
 [2]
 In Shamblin, however, the purchasers followed a concerted course of shady dealings, such as refusing to return a certificate of purchase to the Cook County state's attorney, as well as making misleading statements to the court in order to obtain a deed. Id. at 125. Landry's allegations against Chevy Chase do not rise to this level
 
 
 [3]
 In Worchester, the court said, "if Worchester does have [a set-aside right] under California law, we are not powerless to enforce it, and we may grant Worchester relief to the same extent California courts would in similar circumstances." Id. at 1228
 
 
 [4]
 The remaining $40,000 was considered to be unsecured debt
 
 
 [5]
 A residential income property appraisal report prepared at an earlier stage in Landry's case (Exhibit F) estimated a 15% vacancy rate in the rental units. The report also indicated that both property values and rents were declining in the area. Further, there was evidence that some of Landry's tenants were not paying their rent
 Finally, the record contains no evidence that Landry's work as a self-employed car salesman would be a stable source of income.
 
 
 [6]
 In Exhibit F, supra, the operating expenses of the 4-plex alone were estimated at $8,640 per year
 
 
 [7]
 In this regard we note also his failure to make any post-petition mortgage payments