In re Daniel E. JAUREGUI and Sandra
K. Jauregui, Debtors.

Daniel E. JAUREGUI and Sandra
K. Jauregui, Plaintiffs,

v.

Michael RICCI, Executor, Defendant.

Bankruptcy No. 95–11674–B–13F.
Adv. No. 96–1002.

United States Bankruptcy Court,
E.D. California,
Fresno Division.

June 18, 1996.

Henry D. Nunez, Law Offices of Henry D. Nunez, Fresno, CA.

John M. Cardot, Law Offices of Hanno T. Howell, Fresno, CA.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BRETT J. DORIAN, Bankruptcy Judge.

Defendant Michael Ricci ("Ricci") has filed a motion for summary judgment in this adversary proceeding as to all dispositive issues

presented by the complaint. The complaint seeks: (1) to have a trustee's deed which was given to and recorded by Ricci upon his pre-petition foreclosure of the plaintiffs' residence declared void, (2) to have the confirmed Chapter 13 plan's designation of Ricci as a secured creditor declared binding on Ricci, (3) to have legal title in the residence declared to be held by plaintiffs, and (4) to enjoin Ricci's state court efforts to obtain possession of the residence. Defendant's motion will be granted.

The plaintiffs, Daniel and Sandra Jauregui, are the debtors in this Chapter 13 proceeding. They filed their petition on April 6, 1995. They had previously filed a Chapter 13 petition in this court[1] on November 29, 1994. A plan was never confirmed in the prior case, and it was dismissed on March 10, 1996—less than four months after its filing.

Plaintiffs are asserting two theories for the proposition that they remain the legal owners of the residence. The first is that the trustee's sale under Ricci's deed of trust was improperly conducted. The second is that even if Ricci had become the legal owner of the property prior to their second Chapter 13 filing, their confirmed plan—confirmed without objection by Ricci—which classifies Ricci as a secured creditor, has magically revested them with legal title to the property and relegated Ricci to the status of a secured creditor.

The facts as to the first theory are as follows: Prior to the filing of plaintiffs' first Chapter 13 case, Ricci had begun non-judicial foreclosure of the residence under a deed of trust. A trustee's sale of the residence had been noticed prior to the Chapter 13 filing but was automatically stayed by the bankruptcy filing by 11 U.S.C. § 362(a). As permitted by California law[2] the sale was continued from time to time during the pendency of the Chapter 13 case. Upon dismissal of the case by an order filed on March 10, 1995, and entered on March 14, 1995, the residence was sold on March 22, 1995, under the terms of Ricci's deed of trust, with Ricci as the purchaser.

Plaintiffs urge that various defects occurred in the postponements of the sale, but the defects cited are either irrelevant to the state's statutory scheme or are not supported by evidence.

Plaintiffs further rely on *In re Tome*, 113 B.R. 626 (Bankr.C.D.Cal.1990), to support their claim that the sale was invalid because they were not given actual notice of the sale after dismissal of their Chapter 13 case. After an extensive review of California law with respect to foreclosures under deeds of trust, the court in *Tome* ruled that a lender who had scheduled a sale under a deed of trust which was stayed because of an intervening bankruptcy but who has continued the sale in accordance with California law (which does not require further notice of the continuances to the owners) must, upon obtaining relief from the automatic stay to proceed with foreclosure, provide actual notice of the continued sale date to the debtors.[3]

Specifically the court in *Tome* holds that although the sale was conducted in accordance with California statutory law, "bankruptcy law requires that a mortgagee, who sells property of the estate after obtaining relief from stay, give adequate notice of the sale, both to the debtor and to prospective purchasers." [*Tome* at 627.] With the exception of some language admitted to be dicta in *In re Ellis*, 60 B.R. 432, 436 (9th Cir. BAP 1985), the court in *Tome* cites no other authorities for this position. Rather, it follows law that is not, in fact, known to exist. California law, which the court notes does not limit the number of sale continuances if a bankruptcy is pending, clearly does not require further notice of any kind when a continued sale follows a termination of the automatic stay. California law merely requires in Civil Code § 2924g(d) that the sale cannot take place until seven days after the stay terminates, absent an express court order to the contrary.

---

1. Case Number 94–15516.

2. California Civil Code § 2924g(c)(2).

3. *Tome* involved a Chapter 7 liquidation case filed more than a year and a half after the sale of the property at issue. The sale occurred during a prior Chapter 13 case in which a plan had been confirmed.

A major portion of the factual basis in support of the court's opinion in *Tome* appears to come not from any evidence presented but from the court's anecdotal observations of foreclosures in the bankruptcy setting. It is also to be noted that the sale in *Tome* took place after stay relief was obtained (as opposed to a dismissal of the case) and while a Chapter 13 case was still pending. Also, the court noted that there was substantial equity in the property and that it was possible that a noticed sale might have produced excess cash which the debtors could have used to pay creditors—a view which is, of course, pure speculation. Further, the court's requirement that notice must also be given to prospective purchasers, without any suggestion as to how that group might be identified and contacted so as to achieve a valid sale, darkly clouds whatever value the opinion might have otherwise enjoyed.

The reality of foreclosures in the Chapter 13 context based on this court's experience with thousands of Chapter 13 cases [WARNING: ANECDOTAL OBSERVATIONS FOLLOW] is that the notice of sale is what precipitates the Chapter 13 filing. The debtors know that there is a sale pending. California law is very clear that the sale can be continued a limitless number of times during a pending bankruptcy case. Relief from stay in a pending Chapter 13 is generally granted only when it is clear that the debtor cannot maintain post-petition payments and has no hope of otherwise saving the property or realizing any equity from it.

Debtors know when efforts to terminate the stay are commenced and completed. If debtors have a real interest in knowing an impending sale date, it does not appear unreasonable to require them to assume some responsibility for contacting the party handling the foreclosure and obtaining the sale date. The reality is that virtually all debtors know or should know that relief from the stay means that the sale will proceed in due course and that, absent some effort on their part, the property will be lost.

Debtors who unrealistically cling to the hope that somehow a miracle will provide funds to cure post-petition defaults to a lender and/or a Chapter 13 trustee (the usual reasons why stays are terminated or Chapter 13 cases are dismissed) and stubbornly refuse to attempt a realistic sale which might preserve some equity, should not be rewarded by gaining additional time before a sale can take place by a requirement that the lender—who has usually waited months to complete the sale and has spent substantial sums of money to obtain termination of the stay—spend even more funds and suffer further delays for the purpose of providing additional notice.

It is important to note that the problems noted in *Tome* and this case arise only when the notice of sale occurs prior to the bankruptcy filing. If foreclosure had not begun or if the notice of sale had not been given, no sale can occur without actual notice. A debtor who ignores or chooses to forget the status of a pending foreclosure should rightly bear the consequences of doing so.

It can also be observed that *Tome* is in any event distinguishable, as the debtors in that case had confirmed a Chapter 13 plan prior to the sale which ultimately took place. Also, the court apparently felt that there was bad faith involved in connection with a transfer of the note and deed of trust to a third party for no obvious reason five days prior to the sale and in the apparent thwarting of efforts by the debtors to re-finance the property. The court further speculated that nullifying the sale might result in a payment to unsecured creditors in the pending Chapter 7 bankruptcy which the debtors had filed after the sale. In the final analysis, it appears that the court fashioned an inflexible rule out of whole cloth because of what it deemed to be compelling circumstances, but it was a rule unsupported by existing authority or the equities present in most bankruptcy cases.

Similar conclusions rejecting the analysis in *Tome* have been reached by other courts in this Circuit: *In re Macalma v. Bank United of Texas,* 192 B.R. 751 (N.D.Cal. 1995); *In re Houghton,* 123 B.R. 869 (Bankr. C.D.Cal.1991); *In re Thomas,* 194 B.R. 641 (Bankr.D.Ariz.1995); and *In re Stober,* 193 B.R. 5 (Bankr.D.Ariz.1996).

676

Unlike *Tome* the debtors here never confirmed a Chapter 13 plan in their first case. Unlike *Tome* there are no compelling circumstances in the present case. Unlike *Tome* the debtors' first case was merely a brief, failed effort to confirm a Chapter 13 plan.

Because this court must reject the ruling in *Tome* as inapplicable to anything other than the facts of that case, plaintiff's first theory for relief is deemed to be without support in either fact or law.

■ The facts as to the second theory under which plaintiffs seek relief are as follows: A plan was confirmed in the present Chapter 13 case by an order filed on June 16, 1995. The plan identified defendant Ricci in a section designated "CLASS TWO—PRINCIPAL RESIDENCE" and indicated that he would be paid an arrearage of $7,750.00 with 10% interest. The main body of the plan describes a Class Two claim as one "secured by Real Property that is the Debtor's PRINCIPAL RESIDENCE. Each creditor shall retain its lien except to the extent it may be affected by any subsequent motions pursuant to Section 522(f). Regular monthly payments, including impounds, are to be made by the Debtor directly to said Creditor and start on the due date after date of filing of the petition. Arrearage payments shall be paid at 10% A.R.P. unless expressly provided otherwise."

Plaintiffs rely on the Ninth Circuit's recent decision in *In re Ivory,* 70 F.3d 73 (9th Cir.1995), which held that a governmental taxing entity which claimed to have become the owner of property prior to the filing of a Chapter 13 case, was nevertheless deemed to hold status only as a creditor because it was bound by the terms of a confirmed plan which so provided.

It appears from the facts noted in that case that the debtor had a right of redemption which had not expired at the time the bankruptcy case was filed but which had expired prior to confirmation of the plan. For this reason it was the taxing entity's contention that redemption (by payments under the plan) was no longer available. Citing only the *res judicata* effect of the confirmation order, the court in effect estopped the taxing entity from asserting a right to argue that redemption—available when the Chapter 13 was filed—was not available by the time of the confirmation hearing and could not be accomplished through the plan.

What the Ninth Circuit held is that even if the taxing entity would have prevailed had it litigated the issue of the right of the debtor to redeem the property, it was an issue which should have been raised at the confirmation hearing. In so ruling the court is saying that a party will not be allowed to raise an issue which properly should have raised earlier, even if there was possible merit to the party's claim that the court would have lacked jurisdiction in the matter.

Nothing in the *Ivory* opinion discusses the form of notice given regarding the plan; but apparently it was the view of the Bankruptcy Court, the District Court, and the Court of Appeals, all of which ruled against the taxing entity, that the form of notice given was adequate to make the taxing entity bound by the confirmed plan. Also, as the redemption period had not expired at the time the bankruptcy petition was filed, the bankruptcy estate had an interest in the property, and the bankruptcy court had jurisdiction over the property at the onset of the case [11 U.S.C. § 541].

The notice with attached plan in the present case, of which the court takes judicial notice, in no way warns a party that a failure to object to confirmation of the plan will make every fact, inference and conclusion of law asserted in the plan binding on every party referred to in the plan.

Unlike the taxing entity in *Ivory,* Ricci held full legal and equitable title to the property at the time this case was filed by virtue of his purchase of the residence at the trustee's sale. The debtor/creditor relationship had been totally extinguished. Unlike the debtor in *Ivory,* the plaintiffs at filing had no vested, existing right to regain full title to the property. Ricci could rightfully take the position that as of the filing of the case there was nothing owing to him and there was no reason for him to consider himself affected by anything which occurred in the bankruptcy court.

Plaintiffs' position asserts that a debtor in a Chapter 13 proceeding can become the owner of another person's property by merely alleging in a proposed plan: (1) ownership of the property and (2) a monetary debt to that person. Even if all of that were absolutely untrue, a confirmed plan containing such allegations would have, in the plaintiffs' view, the effect of transferring ownership of the property to the debtor.

A review of the plaintiffs' plan shows that it merely describes the subject property as the plaintiffs' principal residence (which was true as they have resided there throughout these proceedings). It does not state that the plaintiffs were claiming to be the owners of the property, merely that they intended to make "arrearage" payments of a given amount to Ricci. Given the fact that the present Chapter 13 was filed barely two weeks after the trustee's sale of the property, it would not be unreasonable for a party in Ricci's position to assume that the plaintiffs' intention to pay on a debt no longer in existence was anything other than a mistake. At best the proposed plan was confusing.

Given the vagueness and deficiencies of the plan noticed in this case and the factual differences between the instant case and *In re Ivory*, plaintiffs cannot invoke principles of *res judicata* to establish legal title to the subject property. To hold otherwise would be violative of the most basic concepts of due process.

A separate order granting defendant Ricci's motion for summary judgment and for final judgment for defendant will issue.