[Civ. No. 25300. Fourth Dist., Div. Two. Jan. 14, 1982.]

GLEN S. MILLER et al., Plaintiffs and Respondents, v.
GEORGE J. COTE et al., Defendants and Appellants.

**COUNSEL**

Best, Best & Krieger and Ronald J. Kohut for Defendants and Appellants.

Fulop & Hardee, Edmund S. Schaffer and John M. Petrasich for Plaintiffs and Respondents.

**OPINION**

**KAUFMAN, J.**—The trial court issued a permanent injunction against defendants' foreclosing a deed of trust encumbering a leasehold estate on account of a transaction claimed by defendants to trigger the "due on" clause contained in the deed of trust. Defendants appeal (Code Civ. Proc., § 904.1, subd. (f)) and will hereafter be referred to as the appellants.

Based on formal findings of fact and conclusions of law made by the trial court, plaintiffs, hereafter referred to as the respondents, advance three bases for upholding the injunction: (1) the notice of default was both premature and invalid under Civil Code section 2924; (2) the transaction complained of did not constitute an event triggering the "due on" clause; (3) exercise of the "due on" clause would constitute an unreasonable, and therefore invalid, restraint on alienation under Civil Code section 711 and the decision of the California Supreme Court in *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970].

We are persuaded that respondents' first contention is both meritorious and dispositive. Accordingly, the judgment will be affirmed. It is unnecessary and would be inappropriate for us to attempt to deal with the other issues raised because, even if a new notice of default should be filed and new foreclosure proceedings commenced, the one-year period specified in both the facilities management agreement and the option agreement involved in the transaction complained of would have expired, so the factual matrix for any subsequent trial would undoubtedly be different from that presented by the record before us. (See Code Civ. Proc., § 43.)

Inasmuch as we will not reach several of the major issues, a complete and detailed statement of the facts is not required. The pertinent facts are as follows.

In October and November 1973 respondent Miller and Larry L. Schoonard doing business as a partnership under the fictitious name Orange County Aviation (OCA) purchased from appellant Cote most of the assets of the business Cote had been conducting at the Orange County Airport on land leased from the County of Orange. The lease was a ground lease; all buildings and improvements belonged outright to Cote.

The purchase price was $125,000 of which OCA paid $15,000 in cash. For the balance OCA executed a promissory note in favor of Cote in the amount of $110,000 together with a deed of trust on the leasehold (the ground lease exclusive of structures and improvements) as security for payment of the promissory note.

Pursuant to express negotiations between the parties, each of whom was represented by counsel, the deed of trust contained a "due on"

clause that in substance afforded the beneficiary the option to declare the entire balance of unpaid principal and interest due forthwith should the trustor "sell, convey, transfer, assign or dispose of, or enter into a contract to sell, or lease with option to purchase, the property secured ... or any interest therein, or agree so to do ... without the written consent of Beneficiary being first obtained, ..."

Schoonard having withdrawn from active participation in the business of OCA in about March 1978, the business was operated until March 1979 by respondent Miller. In March 1979, Miller was arrested and imprisoned while on a trip to Mexico and although he was subsequently released in November of 1979, at the time he was first imprisoned he was informed he might remain so for an indefinite period of time. Miller's wife, Connie, attempted to carry on the business, but she was not experienced in business matters. Howard W. Meister II expressed a willingness to take over management of the business for a short period through a corporation to be formed by him provided the corporation to be formed were granted an option to purchase the business and its assets.

On June 8, 1979, the Millers and Meister executed a document entitled "MEMORANDUM OF INTENT REGARDING PURCHASE, SALE AND INTERIM OPERATION OF ORANGE COUNTY AVIATION" which set forth the parties' intention subsequently to enter into two agreements to be known as the facilities management agreement and the option agreement.[1]

About June 13, 1979, Meister and several other individuals formed a corporation for the purpose of entering into the option and management agreements contemplated by the memorandum of intent.

Also in June before any documents between the Millers and Meister were signed, Mrs. Miller told Cote about the negotiations between the Millers and Meister. Cote told her he did not like the arrangement and would stop it. Mrs. Miller never told Cote that the business had been sold, assigned or transferred. Nevertheless, on July 1, 1979, Cote sent Mrs. Miller a letter (the acceleration letter) asserting that OCA's interest in the lease had been sold. or assigned without his consent in violation of the "due on" clause contained in the deed of trust and stat-

---

[1] The option agreement was to be contained either within the facilities management agreement or in a separate instrument.

ing that he was accelerating the due date of the unpaid balance of the debt, demanding that the entire unpaid balance of approximately $77,000 be paid to him in full within 15 days.

On or about July 15, 1979, lawyers for the Millers and Meister and the newly formed corporation, Orange County Aviation, Inc. (OCA, Inc.), finished drafting a proposed option agreement and a proposed management agreement and unsigned copies were sent to the County of Orange to determine whether the county would consent to the transaction. On about July 1, OCA, Inc. took physical control of the business and property. However, the management and option agreements were not actually executed by the parties until August 21, 1979, although they recited that they were "made" as of July 15, 1979.

Meanwhile, on August 6, 1979, Shoshone Service Corporation, apparently as substitute trustee of the deed of trust, prepared and Cote executed a "Notice of Default and Election to Sell Under Deed of Trust" which was recorded by appellants on August 16. The notice of default specified as the default relied on: "Original Trustor *transferred the property* without the written consent of the Beneficiary and, therefore, Beneficiary declares all sums due and payable; plus the proposed termination of the Lease by the County of Orange."[2] (Italics added.)

All payments of principal and interest due Cote under the terms of the promissory note and deed of trust were in fact timely paid. Being unable to persuade Cote that there had been no transfer or assignment of the leasehold, respondents instituted this action to enjoin the threatened foreclosure by trustee's sale.

The trial court found and concluded that the management agreement and option agreement, considered alone or in combination, did not constitute an act triggering the "due on" clause contained in the deed of trust and, further, that even if the "due on" clause was triggered, its exercise under the circumstances constituted an unreasonable and therefore unlawful restraint on alienation. However, the court also made a number of findings and conclusions bearing on the validity of the notice of default. It found that as of the date of Cote's acceleration

---

[2]On about July 24, 1979, the county had sent a letter notice of default to OCA based on an asserted assignment of the lease which under the terms of the lease would have required the county's consent. The county subsequently indicated, however, it would not consider OCA in default nor would its consent be required unless and until OCA, Inc. elected to exercise its option to purchase the leasehold.

letter (July 1, 1979) "Connie Miller had not negotiated the sale of [the leasehold] in violation of any covenant contained in the deed of trust, and nothing had occurred to entitle Cote to accelerate the secured indebtedness." It found that the default specified in the notice of default was as previously quoted and that "[n]either at the time the Notice of Default was executed, nor at the time of its recordation, had the security been transferred by the trustor, nor had any other default occurred under the terms of the deed of trust." It concluded: "There was no breach or default in existence at the time that defendants executed, nor at the time that they recorded, the Notice of Default. The Notice of Default, therefore, was not in compliance with the statutes governing non-judicial foreclosures and any sale conducted pursuant thereto would have been invalid." We agree.

■ The procedure for foreclosing on security by a trustee's sale pursuant to a deed of trust is set forth in Civil Code section 2924 et seq. The statutory requirements must be strictly complied with, and a trustee's sale based on a statutorily deficient notice of default is invalid. (*System Inv. Corp.* v. *Union Bank* (1971) 21 Cal.App.3d 137, 152-153 [102 Cal.Rptr. 378]; see Cal. Mortgage & Deed of Trust Practice (Cont.Ed.Bar 1979) § 6.40, p. 295; see also *Bisno* v. *Sax* (1959) 175 Cal.App.2d 714, 720 [346 P.2d 814].)

Civil Code section 2924 requires that the notice of default contain "a statement that a breach of the obligation for which such . . . transfer in trust is security has occurred, and setting forth the nature of such breach . . . ." "A purpose of the required statement in the notice of default is to afford the debtor an opportunity to cure the default and obtain reinstatement of the obligation within three months . . . as provided in section 2924c of the Civil Code." (*System Inv. Corp.* v. *Union Bank, supra*, 21 Cal.App.3d at p. 153.)

■ The notice of default upon which appellants rely was defective in two fundamental respects. First, even if respondents' conduct had been an act sufficient to trigger the "due on" clause, the notice of default was premature, thus shortening the statutorily prescribed period in which the obligation could be reinstated. Secondly, the default specified in the notice was no default, and appellants are bound by their notice of default; they cannot assert any ground of default other than that stated in the notice. (*System Inv. Corp.* v. *Union Bank, supra*, 21 Cal.App.3d at p. 153; *Tomczak* v. *Ortega* (1966) 240 Cal.App.2d 902, 904 [50 Cal.Rptr. 20].)

As previously noted the trial court found that on August 6, 1979, when the notice of default was executed and on August 16 when it was recorded, there had been no default under the note or deed of trust nor any act triggering the "due on" clause. The evidence amply supports that determination of the court. The only agreement that had been executed at those times was the memorandum of intent. Clearly, that did not constitute an act triggering the "due on" clause in the deed of trust. It expressly contemplated the parties' entering into a facilities management agreement and an option agreement, the details of which the parties had not yet agreed upon. It bound the parties only to attempt in good faith to reach future agreement. Because the agreements had not yet been prepared and executed, OCA, Inc.'s taking physical control of the premises on or about July 1 could only have been as OCA's agent or manager and, thus, was not a transfer of the leasehold of a nature that would trigger the "due-on" clause. The notice of default was, therefore, premature.

Moreover, the default specified in the notice of default was, as previously noted, the transfer of the leasehold without the written consent of the beneficiary. Even if there had been such a transfer, however, it would not have constituted a default. It would merely have given the beneficiary the option of accelerating the due date of the unpaid balance of principal and interest and making a demand for payment. As stated in California Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1979) section 2.35, at page 47: "A due-on clause does not provide that the trustor will not convey ... the property. Rather, it makes a conveyance ... an occasion for the lender to elect to accelerate the existing installment loan. The lender first declares an election to accelerate the loan; if the accelerated total is not paid, a notice of default and election to sell is recorded."

California Real Estate Secured Transactions (Cont.Ed.Bar 1970) section 4.57, page 186, is to the same effect: "In light of the narrow validity of the due-on-sale clause, a beneficiary who has not consented to a transfer of the property should not file a notice of default, as he would when an installment is not paid. Instead, he should give notice of election to accelerate by virtue of the transfer, and then file a notice of default if the accelerated obligation is not paid."

Here, of course, by his letter of July 1, 1979, Cote did purport to elect to accelerate the obligation and demanded payment within 15 days. However, as we have previously observed in discussing the prema-

turity of the notice of default, at that time there had been no act triggering the "due on" clause, so the purported acceleration and demand for payment by Cote constituted a nullity. More importantly, and more to the point, nonpayment of the accelerated obligation was not the default specified in the notice of default. Thus, the notice of default failed to comply with the requirement of Civil Code section 2924 that it contain a statement "setting forth the nature of [the] breach."

The notice of default being fatally defective, the trial court acted with propriety in enjoining the pending foreclosure by trustee's sale.

The judgment is affirmed. Upon restoration of its jursidiction, the trial court ·shall award respondents an additional sum in a reasonable amount on account of their attorney fees on appeal.

Morris, Acting P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied February 2, 1982.