In re Thomas C. HOUGHTON and Geraldine P. Houghton, Debtors.

Thomas C. HOUGHTON and Geraldine P. Houghton, Plaintiffs,

v.

FIRST AMERICAN CAPITAL BANK, Defendant.

Bankruptcy No. SA 89–08163JB.

United States Bankruptcy Court, C.D. California.

Feb. 12, 1991.

Michael D. Mansfield, Orange, Cal., for Debtors, Thomas and Geraldine Houghton.

John A. Hendry, Hendry, Serian, Alt & Jouanicot, Pasadena, for First American Capital Bank.

## MEMORANDUM OPINION RE PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND OTHER RELIEF

JAMES N. BARR, Bankruptcy Judge.

### THE PROCEDURAL SUMMARY

In simple terms, I have before me the Debtors' motion for a temporary restraining order (hereinafter "TRO") and their motion for relief from prior orders granting First American Capital Bank (hereinafter "the Bank") relief from the automatic stay in two related bankruptcy cases. Based on the following findings and conclusions, I will grant the motion for TRO and deny all other relief requested by the Debtor.

### JURISDICTION

This court has jurisdiction to determine the subject motions pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11); 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district); and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). These motions are core matters pursuant to 28 U.S.C. § 157(b)(2).

### THE FACTUAL SETTING

The Debtors commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the Code), on December 20, 1989. It was converted to a case under Chapter 7, by an order entered September 20, 1990. Among the assets of the Debtors in this case is 100% of the stock of a professional corporation known as "Thomas C. Houghton, D.D. S." However, on January 3, 1990 that entity filed a petition for relief under Chapter 7 of the Code (the corporate case). Both cases were assigned to me because of the affiliation of those debtors.

In March, 1984, the Bank loaned $240,-000.00 to "Thomas C. Houghton, D.D.S. and Geraldine P. Houghton," for which the Bank received a lien on the individual Debtors' residence by way of deed of trust from the Debtors. In November, 1986, the individual Debtors obtained another loan from the Bank of $165,000.00, secured by its lien on the residence, by liens on the individual Debtors' "general intangibles;" and by assignment of their interests in a partnership. (Hereinafter, the individual Debtors, i.e., the Debtors in this bankruptcy case, will be referred to simply as "the Debtors".)

The Debtors thereafter defaulted on their obligations to the Bank, and when the two bankruptcy cases were commenced the Bank sought relief from the automatic stays in both cases to enable it to foreclose its lien on the residence. It is not certain why the Bank sought such relief in the corporate case, for the schedules of assets in the cases reveal that only the individual Debtors claimed an interest in that property.

The motions in both cases were heard by me on July 3, 1990. Attorney Donald Scherer appeared at that hearing on behalf of all Debtors in both cases, and presented their opposition to relief from the automatic stay. I granted the Bank's motion in each case and nearly identical orders to that effect were entered in each bankruptcy case on July 20, 1990. Those orders each provide, in pertinent part:

"[The Bank] is granted immediate relief from the automatic stay pursuant to 11 U.S.C. Section 362 for all purposes necessary under state law including, but not limited to, foreclosure upon and sale of the real property commonly known as 12642 Hinton Way, Santa Ana, California and legally described as ... (legal description omitted). [The Bank] may proceed with foreclosure on the subject property, but shall not hold its' Trustee Sale until on or after October 12, 1990."

The orders also permit the Bank to proceed with unlawful detainer actions in state court to evict the respective Debtors if the need therefore arises after foreclosure.

The Bank foreclosed its deed of trust on the Debtors' residence on October 15, 1990; and thereafter obtained judgement against the Debtors in state court for possession of that property. The Debtors were to be locked out of the residence on November 14, 1990.

However, on that date, the Debtors sought a TRO "[p]ursuant to Federal Rule of Civil Procedure 62(b) and pursuant to F.R.C.P. 60(b)." They also asked that I apply F.R.C.P. 60(b) to grant them relief from the effect of my prior relief from stay orders. They contend that in proceeding with foreclosure, the Bank failed to comply with (a) Section 2924 of the California Civil Code, (b) the provisions of the "Security Agreements, Business Loan Agreements and the Original Deed of Trust" between the parties, and (c) my orders for relief from the automatic stay; and that therefore, their eviction should be enjoined.

### EVIDENTIARY OBJECTIONS

The Debtors would have me accept as evidence, numerous statements which are not relevant to the motions before me. Then, too, many of the "facts" which the Debtors urge me to accept, suffer from a paucity of competent evidence. In its opposition to The TRO, the Bank asked that I strike the declarations offered by the Debtors.

As to the declarations of attorney Michael D. Mansfield, counsel for Debtors in this matter, I will grant the Bank's motion to strike the entire declaration made a part of Debtors' pleading entitled "Application For Emergency TRO ..." (i.e., declaration dated November 13, 1990) as well as Mansfield's declaration made a part of the Debtors' response to the Bank's original application (i.e., declaration dated December 6, 1990), although it is likely that the Bank's request to strike was directed only at the November 13, 1990 declaration. I do so because the "evidence" offered by those declarations are expressions of either hearsay or irrelevant matter. I include in the category of irrelevance, statements by Mansfield which he apparently wants me to accept as professional opinion.

Debtors included another declaration of Attorney Mansfield in their Response to the Bank's opposition to TRO; and the Bank did not object to that declaration. However I find nothing of value in that declaration; for it is apparently merely a plea for credibility. I know of no other way to characterize an attorney's statement, *presented under penalty of perjury*, which offers nothing but conclusions such as "The Debtors' Application for Temporary Restraining Orders is grounded in fact, and is warranted by existing law ... presented in good faith for the extension of law to the premises and allegations contained therein."

■ I will grant the Bank's request to strike the declaration of attorney Donald Scherer, dated November 14, 1990, which is presented as part of the Debtors' "Application For Emergency TRO ...," for all the reasons noted above, except as to portions of paragraphs 3 and 4 of that declaration which state, in effect, that Attorney Scherer represented the Debtors at the hearings on the Bank's motions for relief from the automatic stay in both bankruptcy cases, July 3, 1990. That is obviously testimony of a percipient witness; and it is relevant to the issues before me.[1]

---

1. That sentence is "relevant" to the Debtors' request for relief from the effect of the Orders for Relief From the Automatic Stay. Ironically,

As to the Bank's request that the declaration of Thomas C. Houghton be stricken, I again note that he gave two declarations in support of the request for TRO. One is dated November 14, 1990 (which is the one most likely attacked by the Bank's request to strike), and the other is dated December 6, 1990. Although I find little persuasive value in either declaration, and despite the fact that much of what is said there is probably hearsay and is of questionable relevance, I will deny the Bank's motion to strike those declarations, for there is a thread of admissable evidence within them. I will analyze those declarations later in this memorandum.

■ Debtors offered another declaration to which the Bank did not object, i.e., the declaration of attorney Richard S. Paul (an associate of Attorney Mansfield). However, the "declaration" is not made under penalty of perjury [Bankruptcy Rule 9017 and 28 U.S.C. § 1746]. It is apparently offered as the testimony of an "expert" presenting legal conclusions which he drew from the review of documents and from interviews with the Debtors. I decline to accept such as evidence in this matter, relying on my prerogative/mandate to discern the difference between evidence and argument.

## THE PROCEDURAL TALE

The parties to this motion, i.e., the Debtors/Plaintiffs and the Bank, found their way to this point by an unfortunately torturous route, procedurally. The winding road taken by counsel, leads me back to the doorstep of Plaintiff's counsel who, on or about November 14, 1990, called the Bank's counsel to advise that at 4:00 p.m. that day the Debtors would be seeking a Temporary Restraining Order (TRO) to prevent the Bank from evicting the Debtors from their home. That hearing had to be held before Judge John E. Ryan of this court because I was attending a conference at the time.

Counsel crossed swords only momentarily that day. Counsel for the Debtors argued, among other things, that the Bank had foreclosed on the Debtors' residence improperly because the court's files did not contain an order granting the Bank relief from the automatic stay in the corporate case. The Bank's counsel apparently did not have with him a conformed copy of such an order, and none could be found in the court's files at that time. Counsel then agreed that there would be no eviction of the Debtors until after the request for TRO could be considered by me upon my return to court. The matter was set on my calendar for December 6, 1990.

On December 5, 1990, taking a lead from the argument of Debtors' counsel at the November 14, 1990 hearing, counsel for the Bank filed a pleading entitled "Ex Parte Application For Order Confirming And Validating Previous Orders Relieving First American Capital Bank From Automatic Stay." Copies of two orders were attached—entered the same date (i.e., July 20, 1990), granting the Bank relief from the automatic stay in each of the affiliated cases. As noted above in the factual summary, those orders did, indeed, grant the Bank this court's authority to proceed with foreclosure upon the Debtors' residence and, if necessary, to evict the Debtors. By its "Ex Parte Application" the Bank sought only recognition of the existence of both orders and an "Order confirming and validating" them. At that point, the Bank filed no other opposition to the Debtor's request for TRO.

On December 6, 1990, the day of the first hearing before me on this matter, the Debtors filed their "Objection To Application (Ex Parte) For Order Confirming And Validating Previous Orders Relieving First American Capital Bank From Automatic Stay, and Debtor's Application For TRO Of All Proceedings Pending Hearing On Debtor's Complaint To Set Aside Trustee's Sale." However, as of December 6, 1990 the Debtors had not filed any such complaint against the Bank.[2]

---

it tends to prove the Debtors' are not entitled to such relief.

**2.** The Debtors finally filed their complaint initiating this adversary proceeding against the Bank and numerous others, on December 21,

At the hearing on December 6, 1990, the Debtors' counsel acknowledged the existence of both orders for relief from the automatic stay; and having been presented no authority for the proposition that I should "confirm and validate" my prior orders, and finding such a process unnecessary in the extreme, I denied the Bank's application therefor and set a further hearing on the Debtors' application for TRO. In so doing, I commented that it was not likely that such relief could or would be granted in the absence of an existing adversary proceeding to which the TRO could be related [Bankruptcy Rule 7001(7)].

The TRO hearing was continued to December 21, 1990 at 10:00 a.m., and prior thereto the Bank filed a Memorandum of Points and Authorities in opposition to the issuance of a TRO. The Bank focused on the Debtors' request for "Relief From Order Of Relief From Automatic Stay" (i.e., based on Rule 60(b) arguments). Rule 7001 concerns were not addressed by the Bank or the Debtors at that hearing (or since then). However, in fact, at the time of that hearing, the Debtors had still filed no complaint; although I was assured that the complaint would be filed that very day.[3]

I am now finally presented with an adversary proceeding, a motion for TRO based thereon, and a motion for relief from prior orders in this bankruptcy case. The bank agreed not to evict the Debtors until I rule on those motions.

## ENTITLEMENT TO RELIEF FROM PRIOR ORDERS

■ As to the Debtors' motion for relief from the effect of my prior orders, I deny that motion for want of sufficient Points and Authorities exploring its relevant issues. The Debtors' declaration testimony as to their hopes and dreams, intermingled with testimony of their financial, physical and emotional problems is not sufficient to set me to the task of researching their motion for them. However, I also find little, if any, credible evidence to support such a motion, whatever the issues and applicable law may be.

Doctor Houghton testified in his declarations about the difficulties he experienced in dealing with attorney T.J. Pontaleo since January, 1990. Other than the statement of Attorney Scherer, that he represented the Debtors and the corporate Debtor at the hearings on the Bank's motions for relief from the automatic stay, Doctor Houghton's statements are the only admissable evidence offered by the Debtors on the question of whether they are entitled to relief from the effect of my prior orders granting the Bank's motions. In that regard, Doctor Houghton's declarations prove only that Attorney Pontaleo did not respond to the Bank's motions and did not appear at the hearings on July 3, 1990.

However, I also note from the court files, that a written response to the Bank's motion in the corporate bankruptcy case (i.e., SA 90–00024 JB) was filed by "Thomas C. Houghton, Attorney in Propria (sic) Persona." That pleading, consisting of five pages with four exhibits, was served on the Bank's counsel on June 28, 1990. Doctor Houghton made no mention of those facts or of Attorney Scherer's appearance at the hearings in his plea for empathy. Such selective testimony does not promote Doctor Houghton's credibility, and does not serve his interests here.

Doctor Houghton's declaration also recites that "I am informed and believe my dental equipment to be valued at $100,000, and receivables at $150,000." Even if I were to accept such a statement as evidence in this matter, I do not know to what "dental equipment" or "receivables" Doctor Houghton refers in his declaration. If he is referring to the equipment and receivables his professional corporation owned on the date its bankruptcy case was commenced (i.e., January 3, 1990), they became part of the bankruptcy estate in that case that date, in accordance with 11 U.S.C.

---

1990. However, even as of this date, there is no evidence that the Summons, issued December 26, 1990, has been served on any defendant.

3. In fact, the complaint commencing this adversary proceeding was finally filed on December 21, 1990 (i.e., the date of the last hearing on the Debtors' motion for TRO), at 3:16 p.m.

§ 541.[4] Apparently such testimony is offered to prove that the Bank has adequate protection of its claim against the Debtors in both bankruptcy cases;[5] or perhaps to prove the Debtors' entitlement to some equitable relief. In any event, declarations as to one's "information and belief" tend to prove only the declarant's beliefs; and without appendage to legal theory, such proof is pointless.

## ENTITLEMENT TO INJUNCTIVE RELIEF

■ The Debtors are entitled to a TRO if they can prove:

(a) probable success on the merits of their complaint at the time of trial; or that, at least, the case presents a serious question for adjudication; and

(b) irreparable injury will befall them if the TRO does not issue; or that, at least, the balance of hardships is tipped in their favor.

*Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1134 (9th Cir.1979); *Delaware Valley Transplant Program v. Coye*, 678 F.Supp. 479, 481 (D.N.J.1988).

The balance of hardships tips in favor of the Debtors here, but I am also satisfied that the Debtors will suffer irreparable harm if the TRO does not issue; for they will be evicted from their home in a matter of days if I rule against them. I accept the proposition that being uprooted from one's home by a forced eviction process cannot be adequately repaired by the payment of money.

■ The question of whether the Debtors are likely to prevail at a final hearing on their complaint, or whether, the facts present a serious question requiring judicial resolution, is more difficult. The answer turns on the interpretation of my prior orders granting the Bank relief from the automatic stay, and the application of California law to the proven facts.[6]

Debtors refer me to California Civil Code Section 2924f, alleging that the Bank failed to comply with the notice provisions of that section. However, the Debtors offer no proof that the Notice Of Default or the Notice Of Trustee's Sale were defective, or that the provisions of § 2924f were violated in any way. Quite to the contrary, Notice Of Trustee's Sale, pursuant to the Bank's deed of trust, was recorded and apparently served on the Debtors on or about September 7, 1990, giving notice that the sale would be conducted on October 5, 1990.[7] Then, on September 18, 1990, another Notice Of Trustee's Sale was recorded and apparently served on the Debtors on or about that date, advising that the foreclosure sale of the residence was to be held on October 15, 1990 (i.e., the date the foreclosure sale actually took place).[8] The content of those Notices comply with the requisites of the subject California Civil Code section in every respect. In the absence of

---

4. In my search for evidence, I reviewed the court's files for the corporate bankruptcy case. In the bankruptcy schedules filed by that debtor it asserted that on the date that case was commenced, it owned dental equipment worth only $11,700.00.

5. In the Bank's motions for relief from the automatic stay, it noted that it's claim against the debtors is secured by a lien on the corporation's dental equipment. However, the Bank has neither sought nor received relief from the automatic stay in either case, to foreclose on that lien.

6. The Bankruptcy Code contains no requisites and provides no solutions to questions of the validity of a foreclosure on California real property. *See In re Tome* (Bkrtcy.C.D.Cal.1990) 113 B.R. 626, 629, wherein Judge Bufford notes well the detailed, intricate structure of California foreclosure statutes, and that "The Bankruptcy statute and rules are silent" as to mortgage foreclosures after a secured claimholder receives relief from the automatic stay.

I must add, however, that I respectfully disagree with Judge Bufford's further conclusion that "... a secured creditor may not foreclose on property of the [bankruptcy] estate without giving further notice beyond the minimum required by California law," 113 B.R. at 632.

In the absence of Federal law on point, I am required to apply applicable state law, *Butner v. United States*, 440 U.S. 48, 55, 59, 99 S.Ct. 914, 920, 59 L.Ed.2d 136, 142 (1979).

7. I have no proof that the Notice Of Trustee Sale was actually served on the Debtors, but the Debtors imply same in their papers and do not raise failure of notice as an issue.

8. Again, I find no cause to question the service of that Notice Of Sale upon the Debtors.

proof I have no reason to believe that the Notice Of Default was defective either.

██ The Debtors also contend that the Notices Of Trustee's Sale were recorded in violation of the automatic stay (11 U.S.C. § 362). Reference to the wording of my orders for relief from the automatic stay reveal otherwise; for they each specifically provide that the Bank is thereby granted "immediate relief" from the automatic stay to enable them to take all steps necessary to accomplish foreclosure of its deed of trust, including "foreclosure upon and sale of the real property ..." The next paragraph of the orders then modify the generality of that relief by staying the actual foreclosure sale until "on or after October 12, 1990." Thus, the automatic stay was modified to enable the Bank to take any and all steps necessary to accomplish a foreclosure sale on the residence *immediately* upon entry of those orders on July 20, 1990, *except the foreclosure sale itself.* Therefore, the recording of the Notices Of Sale in September, 1990, was not in violation of the automatic stay in this case or in the corporate case.

The Debtors also contend that the foreclosure sale conducted on October 15, 1990, was held in violation of the provisions of California Civil Code Section 2924g(d), which provides, in pertinent part:

> ... [T]he [foreclosure] shall be conducted not sooner than seven days after the earlier of (1) dismissal of the action [in which a postponement or stay of the foreclosure sale was ordered] or (2) expiration or termination of the injunction, restraining order, or stay (which required postponement of the sale), whether by entry of an order by a court of competent jurisdiction, operation of law or otherwise, unless the injunction, restraining order, or subsequent order expressly directs the conduct of the sale within that seven-day period. If the sale had been scheduled to occur, but this subdivision precludes its conduct during that seven-day period, a new notice of postponement shall be given if the sale had been scheduled to occur during that seven day period.

It has long been beyond dispute that strict compliance with the provisions of California's foreclosure statutes is essential to a valid nonjudicial foreclosure on California real property. (See 27 Cal Jur 3d 231, § 205.)

The wording of the orders for relief from the automatic stay creates no ambiguity. Those orders clearly require "postponement of the [foreclosure] sale" until October 12, 1990; and just as clearly, Section 2924g(d) prohibits such sales within seven days after such postponement terminates. I need not delve deeply into the meaning of Section 2924g(d) to determine its application here, for the statute is clear on its face.

However, I note from the legislative history of Subsection (d) of Section 2924g, that in 1986, the California legislature amended that subsection. Prior to that amendment, the subsection provided for a seven-day waiting period if a "court of competent jurisdiction has not otherwise expressly provided in its original order or any amendment thereto ..." Thus, before the 1986 amendment, an order granting relief from the automatic stay might adequately provide for circumvention of the seven-day waiting period with words such as "Creditor may foreclose immediately." The 1986 amendments require more explicit direction be made in such orders. The orders in this instance do not meet those requisites. Therefore, because the Bank's foreclosure sale was conducted just three days after termination of the stay of foreclosure sale which my orders did provide for, it is likely that the foreclosure sale was invalid. *System Invest. Corp. v. Union Bank,* 21 Cal.App.3d 137, 98 Cal.Rptr. 735 (2nd Dist.1971); *Miller v. Cote,* 127 Cal. App.3d 888, 179 Cal.Rptr. 753 (4th Dist. 1982). (Statutory requirements for foreclosing must be strictly complied with).

The Debtors' Complaint seeks a judgment setting aside the Bank's foreclosure sale; and given my conclusion as to the probable invalidity of that sale, it follows that the Debtors will likely prevail on their complaint.

Because I find grounds for issuance of a TRO within California Civil Code Section 2924g(d), I will not specifically address the myriad of other grounds urged upon me by the Debtors but not supported by their pleadings.

## CONCLUSION

An order will issue in accordance with this opinion temporarily restraining the Bank from evicting the Debtors from the subject property. I will also order the Bank to show cause, on a date certain, why they should not be enjoined from doing so pending the outcome of this adversary proceeding.