Filed 10/20/14  Cabral v. Deutsche Bank Nat. Trust Co. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| JOHN J. CABRAL, | C074543 |
| Plaintiff and Appellant, | (Super. Ct. No. SC20110139) |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY et al., | |
| Defendants and Respondents. | |

Plaintiff John J. Cabral brought suit for wrongful foreclosure on his residence in South Lake Tahoe, contending there were several procedural irregularities in the trustee's sale.  The trial court sustained defendants' demurrers to the second amended complaint without leave to amend on the ground that Cabral failed to tender or offer to tender the amount due on the loan.

Cabral appeals from the judgment of dismissal.  He contends tender was not required because the foreclosure sale was void, not simply voidable.  He contends the

1

sale was void because: (1) an amended notice of default was required after the deed of trust was assigned; (2) there was no authority to conduct the sale because the authorizing documents, two assignments of the deed of trust and a substitution of trustee, were robo signed;[1] and (3) a new notice of default was required because the 365-day rule of Civil Code section 2924g, subdivision (c)[2] was violated. We find no merit in these contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Cabal filed suit for wrongful foreclosure in July 2011. Defendants successfully demurrered to the original and first amended complaints. The second amended complaint (SAC) named as defendants Deutsche Bank National Trust Company (Deutsche), MTC Financial, Inc. dba Trustee Corps (Trustee Corps), Mortgage Electronic Registrations Systems, Inc. (MERS), and Central Mortgage Company. The SAC sought damages and injunctive relief for wrongful foreclosure.[3]

The SAC alleged that in 2005, Cabral and his wife executed a deed of trust to secure payment of a promissory note in the amount of $491,250 for the purchase of

---

[1] We understand the term "robo signing" to refer to the practice of signing multitudes of property record documents without any authority. (See *Mendoza v. JPMorgan Chase Bank, N.A.* (2014) 228 Cal.App.4th 1020 (*Mendoza*).)

[2] Further undesignated statutory references are to the Civil Code.

[3] The SAC purports to state 11 causes of action. In fact, most of these are simply different theories of recovery. "[A] 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681.) "[T]he 'cause of action' is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795.)

residential property in South Lake Tahoe.  The lender was Downey Savings and Loan Association and the trustee was DSL Service Company.  Later that year, Downey Savings and Loan Association assigned the deed of trust to MERS.

On December 9, 2009, Trustee Corps, as agent for Central Mortgage, recorded a notice of default.  The notice of default stated that $33,675.40 was due to bring the account into good standing.

Over a month later, on January 29, 2010, a substitution of trustee was recorded.  This substitution stated that Central Mortgage was the current beneficiary under the deed of trust, and it substituted Trustee Corps as trustee under the deed of trust.  The substitution was signed by Lou Ann Howard as Vice President of Central Mortgage.  On the same day and at the same time, an assignment of the deed of trust was recorded.  The assignment was from MERS to Central Mortgage, and was signed by Lou Ann Howard as assistant secretary of MERS.

On September 17, 2010, a notice of trustee's sale was recorded.  It set a sale date of October 8, 2010.  A second notice of trustee's sale was recorded on March 16, 2011, with a sale date of April 6, 2011.

On April 11, 2011, two documents were recorded.  In the first, Central Mortgage assigned the deed of trust to Deutsche.  The second was a trustee's deed upon sale, stating that the property was conveyed to Deutsche upon payment of $445,000 and that Deutsche had purchased the property at the trustee's sale on April 6, 2011.

The SAC alleged the recording of the notice of default by Trustee Corps, the substituted trustee, six weeks before Trustee Corps was actually substituted as trustee rendered all the subsequent foreclosure proceedings, including the trustee's sale, void and of no effect.  The void sale relieved plaintiff of the requirement to tender or offer to tender the amount owed on the underlying debt.

The SAC alleged other reasons why the trustee's sale was void.  It alleged "on information and belief" that Lou Ann Howard was "a mere 'robo signer' without proper

3

authority to bind the principals." Accordingly, the substitution of trustee that she signed was void and made the trustee's sale void. The trustee's sale was also void because it was held more than 365 days after the notice of default was recorded, violating section 2924g, subdivision (c). Finally, the trustee's sale was void because the assignment of the deed of trust to Deutsche, the named beneficiary at the time of the sale, was not recorded until after the sale was conducted, and this assignment was signed by Lou Ann Howard, a robo-signer without authority to bind the principals.

Deutsche, Central Mortgage, and MERS demurred, contending the SAC failed to state a cause of action. These defendants argued, *inter alia*, that Cabral lacked standing as to all causes of action due to his failure to tender the amount owed on the promissory note secured by the deed of trust.

Trustee Corps separately demurred and moved to strike various portions of the SAC.

The trial court ruled that Cabral lacked standing due to his failure to tender and sustained the demurrers without leave to amend. The court entered a judgment of dismissal in favor of defendants Deutsche, Central Mortgage, and MERS. Cabral appealed from this judgment.

## DISCUSSION

### I

*Standard of Review*

The purpose of a demurrer is to test the sufficiency of the pleadings to state a cause of action as a matter of law. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).) The standard of review is clear: " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a

4

demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Our review is de novo. (*McCall v. PacifiCare of Cal., Inc*. (2001) 25 Cal.4th 412, 415.)

II

*Application of the Tender Rule*

Cabral contends the tender rule does not apply here because the trustee's sale was void, not merely voidable.

As a general rule, a borrower seeking to set aside the trustee's sale due to irregularities in the sale notice or procedure "must offer to pay the full amount of the debt for which the property was security." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 112 (*Lona*).) "This rule is premised upon the equitable maxim that a court of equity will not order that a useless act be performed. 'Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention.' [Citations.]" (*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578-579.)

Where, however, the trustee's deed is void on its face, no tender is required. (*Lona, supra,* 202 Cal.App.4th at p. 113.) "Where a trustee sale is void tender need not be alleged because the action is not based in equity." (*Halajian v. Deutsche Bank Nat'l Trust Co*. (E.D.Cal., Feb. 14, 2013, No. 1: 12-CV-00814 AWI GSA) 2013 U.S.Dist. Lexis 20341, at p. *20.)

A. *The Effect of Failure to Send Amended Notice of Default*

Cabral contends that since two assignments of the deed of trust (from MERS to Central Mortgage and from Central Mortgage to Deutsche) were recorded after the recording of the notice of default, and no amended notice of default showing the new beneficiary was sent to him, the trustee's sale was void and must be set aside.[4] Cabral relies on *In re Tome* (Bankr. C.D. Cal 1990) 113 B.R. 626 (*Tome*).

In *Tome,* debtors, who owned a residence encumbered by a loan secured by a deed of trust, filed a Chapter 13 petition for bankruptcy. At the time the bankruptcy petition was filed, the loan was in default and the lender (Meritor) had recorded a notice of default and scheduled a foreclosure sale. Due to the bankruptcy stay, the sale was postponed multiple times, each time by an announcement of the date, time, and place of the scheduled sale. No other notice of postponement was ever given to the debtors. Thereafter, Meritor obtained relief from the stay and rescheduled the foreclosure sale. Just prior to the rescheduled sale, Meritor sold its position to third persons who purchased the property at the sale for the credit bid of the total indebtedness plus $ 17,345. Before the sale, the debtors found a new lender to refinance their home. They contacted Meritor to determine the balance due and were told that the debt had been paid off. They contacted Meritor again the next day and were told their home had been sold at a foreclosure sale that morning. The debtors had no prior notice of this sale date. (*Tome, supra,* 113 B.R. at pp. 627-628.) The debtors asked the court to set aside the sale for lack of notice, both of the sale postponements and of the transfer of their promissory note and

---

[4] Cabral acknowledges that this is a new theory raised for the first time on appeal, but correctly notes the rule barring new theories on appeal does not apply to review of an order sustaining a demurrer. "When a demurrer is sustained without leave to amend the [plaintiff] may advance on appeal a new legal theory why the allegations of the petition state a cause of action. [Citation.]" (*20th Century Ins. Co. v. Quackenbush* (1998) 64 Cal.App.4th 135, 139, fn. 3.)

6

deed of trust. They contended "they were effectively prevented from refinancing their property, paying off their loan and avoiding the foreclosure sale. Debtors contend that this non-disclosure also violated their constitutional rights of due process under the fourteenth amendment." (*Id*. at p. 628.)

As to the last minute sale of the debt, the bankruptcy court found "the defendants failed to discharge their obligations to debtors under California law in connection with the transfer in two respects. First, the transfer rendered inaccurate the notice of default that was recorded by Meritor, and defendants did not record or mail to the debtors an amended notice of default. Second, defendants left Meritor as the only party known to the debtors to contact concerning the loan, and Meritor provided false and misleading information concerning the loan that prevented the debtors from paying it off prior to the foreclosure sale. In consequence, the foreclosure sale must be set aside." (*Tome, supra,* 113 B.R. at p. 635.) The court reasoned that section 2924c, subdivision (b)(1) required notice of the name, address, and telephone number of beneficiary of the deed of trust in the notice of default. Strict compliance with the statute was required and any deficiency in the notice of default required the sale be set aside unless the purchaser was a bona fide purchaser for value without notice of the deficiency.[5] (*Tome, supra,* at p. 635.) "The Court holds that a party that purchases a security interest in property as to which a notice of default has been recorded is required to record and mail to the trust deed grantor an amended notice of default." (*Id*. at p. 636.)

First, we note that *Tome*, a decision of the Bankruptcy Court, is not binding authority on this court. (*Tully v. World Savings & Loan Assn.* (1997) 56 Cal.App.4th 654, 663.)

---

[5] Cabral contends Deutsche was not a bona fide purchaser for value. Defendants do not dispute this contention.

Second, the statutory scheme does not require an amended notice of default when the note and deed of trust are assigned. "Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.) This comprehensive statutory framework is intended to be exhaustive. (*Id.* at p. 834.) "Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute. [Citations.]" (*Lane v. Vitek Real Estate Indus. Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1098.) "The statutory framework for the notice of default process does not require the recording of a new or amended notice of default if circumstances change, including upon the transfer of the beneficial interest." (4 Miller & Starr, Cal. Real Estate (3rd ed. 2011) Deeds of Trust, § 10:225, pp. 10-840 to 10-841.)[6] We decline to impose a requirement not found in the statutory scheme.

Finally, *Tome* is distinguishable on the issue of prejudice. A successful challenge to a foreclosure sale based on a procedural irregularity requires a showing of prejudice to the party attacking the sale. (*6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279, 1284.) In *Tome,* the prejudice to the debtors from failure to provide an amended notice of default--or other notice the loan had been sold--was manifest. They did not know who held their loan and were thus unable to cure the default, which they were prepared to do. (*Tome, supra,* 113 B.R. at p. 628.) Here, by contrast, there is no evidence that Cabral sought to cure the default and was hindered because he did not know the identity of the lender.

---

[6] Cabral refers to Miller & Starr as the " 'Bible' " of real estate law. He contends the treatise cites *Tome* "*with approval.*" While the treatise does cite *Tome* (and notes the risk of a tender to the previous beneficiary), it notes the decision is inconsistent with other cases. (4 Miller & Starr, Cal. Real Estate, *supra*, § 10:225, p. 10-841.)

Any defect in the notice of default did not make the foreclosure sale void.

B. *The Effect of Robo-Signing*

Cabral contends the "robo signatures" of Lou Ann Howard as Vice President of Central Mortgage on a substitution of trustee, and as Assistant Secretary of MERS on an assignment of deed of trust, on the same day, raise an issue as to the authority of Howard to bind her principals. Cabral contends this robo-signing constitutes a " 'specific factual basis' " to challenge the lack of authority to proceed with the foreclosure, and is sufficient to defeat a demurrer under *Gomes, supra,* 192 Cal.App.4th at pages 1155 through 1156.

Cabral's assertion of a factual basis to challenge the authority to proceed with the trustee's sale rests upon the bare assertion of "robo signing" and his argument that "[i]t boggles the mind" to believe Howard could hold both positions. "Although the robo-signing allegation has been launched in many cases, plaintiff fails to cite any authority in which a court set aside a trustee's sale based on a robo-signed document." (*Mendoza, supra,* 228 Cal.App.4th at p. 1036.) In *Mendoza*, we relied on *Maynard v. Wells Fargo Bank, N.A.* (S.D.Cal., Sept. 11, 2013, No. 12cv1435 AJB (JMA)) 2013 U.S. Dist. Lexis 130800 (*Maynard*) in finding a defaulting homeowner lacked standing to challenge the validity of alleged robo-signatures.

In *Maynard*, the plaintiffs asserted that an assignment was void because Kathleen Everson, the woman who signed it, did not hold the title she claimed on the document. (*Maynard, supra*, 2013 U.S. Dist. Lexis 130800 at p. *24.) They supported their allegation by attaching Everson's LinkedIn.com profile and a Fiscal Times Financial Advisor profile, both of which identified her position with Wells Fargo as something other than the position named on the deed of trust she purportedly signed. (*Id*. at p. *25.) The court dismissed all causes of action predicated on the robo-signing allegation. (*Id*. at pp. *27-*28.)

9

The court explained:  "Although Plaintiffs make a valiant effort to bolster their robo-signing allegations with Everson's LINKEDIN.com profile, Everson's profile from the Fiscal Times, and the National Mortgage Settlement Agreement, all miss the mark. Plaintiffs' allegations do not demonstrate that Everson was not authorized in her regular course of duties at Wells Fargo to execute Assignments of Deeds of Trust on behalf of Wells Fargo, nor do Plaintiffs allege that Wells Fargo did not ratify Everson's conduct (as Wells Fargo and not Everson is a named defendant in the instant case). More importantly, however, Plaintiffs' robo-signing allegations fail because Plaintiffs lack standing to challenge the alleged fraudulent transfers because they were not parties to the Assignment, nor were they the intended receipts of the Assignment.  [Citation.] Countless courts have concurred in this result, finding that where a plaintiff alleges that a document is void due to robo-signing, yet does not contest the validity of the underlying debt, and is not a party to the assignment, the plaintiff does not have standing to contest the alleged fraudulent transfer.  [Citations.]

"Therefore, because Plaintiffs were not parties to the Assignment, do not contest that they are currently delinquent on the underlying debt obligation, and do not allege that they have been making payments towards this obligation (or to whom), the Court finds Plaintiffs could not have been injured by any alleged robo-signing.  Moreover, to the extent that the Assignment was in fact robo-signed, it would be voidable, not void, at the injured party's option.  Here, the injured party would be U.S. Bank, not Plaintiffs. [Citation.]  Accordingly, even assuming the truth of Plaintiffs' allegations, and that Plaintiffs' robo-signing allegations are sufficiently pled, they fail to state a claim." (*Maynard, supra*, 2013 U.S. Dist. Lexis 130800 at pp. *25-28.)

Here, Cabral's showing of robo-signing is significantly less than in *Maynard*.  In any event, even if he could establish robo-signing, for the reasons stated in *Maynard*, he fails to state a claim as the robo-signing did not render the foreclosure sale void.

10

C. *The Effect of the 365-Day Rule of Civil Code Section 2924g, Subdivision (c)*

Finally, Cabral contends the trustee's sale was void because it was held more than 365 days after the notice of default was recorded. He contends a new notice of sale, including a new notice of default was required. Since the statutory requirements were not strictly complied with, the trustee's sale was invalid. (*Miller v. Cote* (1982) 127 Cal.App.3d 888, 894.)

The notice of default was recorded on December 9, 2009. The first notice of sale was recorded on September 17, 2010, with a sale date of October 8, 2010. The second notice of sale was recorded on March 16, 2011, with a sale date of April 6, 2011. The trustee's sale was held on April 6, 2011.

Section 2924g permits postponement of a trustee's sale. Subdivision (c)(1) provides in part: "There may be a postponement or postponements of the sale proceedings, . . . at any time prior to the completion of the sale for any period of time not to exceed a total of 365 days from the date set forth in the notice of sale." "In the event that the sale proceedings are postponed for a period or periods totaling more than 365 days, the scheduling of any further sale proceedings shall be preceded by giving a new notice of sale in the manner prescribed in Section 2924f." (§ 2924g, subd. (c)(2).)

Cabral offers no authority for his position that the 365-day time limit begins with the notice of default and that if a sale is held more than 365 days from the date the notice of default was recorded, a new notice of default must be recorded for a valid sale. He focuses on the term "sale proceedings" and reasons that since the sale proceedings begin with the notice of default, the 365-day limitation must begin with the notice of default. The statute, however, says otherwise and we follow the clear language of the statute. It speaks of postponements exceeding "365 days *from the date set forth in the notice of sale*." (§ 2924g, subd. (c)(1), emphasis added.) "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' [Citation.] 'Where the statute is clear, courts will not

"interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' [Citation.]" (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268.) Here we see no lack of compliance with statutory requirements such that the trustee's sale was invalid.

Thus Cabral has failed to allege facts that would render the trustee's sale void. On appeal, he does not contend he has stated a cause of action that is predicated upon anything other than a void trustee's sale. Accordingly, the tender rule applies. Since Cabral has failed to allege tender, or even an offer to tender, the trial court did not err in sustaining defendants' demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. Defendants shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

                                                              DUARTE         , J.

We concur:

        RAYE          , P. J.

        HULL          , J.